Joseph R. WHITE and Stephani L. White, his wife, Plaintiffs-Appellants,

v.

PUEBLO OF SAN JUAN, Defendant-Appellee.

No. 83–1104.

United States Court of Appeals, Tenth Circuit.

March 9, 1984.

John T. Fitzpatrick, Glass & Fitzpatrick, Albuquerque, N.M. (Angela L. Adams, Glass & Fitzpatrick, Albuquerque, N.M., with him on brief), for plaintiffs-appellants.

L. Lamar Parrish, Ussery & Parrish, Albuquerque, N.M. (Catherine Baker Stetson, Ussery & Parrish, Albuquerque, N.M., with him on brief), for defendant-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and CHILSON, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the District of New Mexico which granted defendant's motion for summary judgment and dismissal of an action. The basis was lack of subject matter jurisdiction. The issues that are presented on appeal are:

1. WHETHER THE DOCTRINE OF SOVEREIGN IMMUNITY PRECLUDES FEDERAL COURT JURISDICTION OVER A CLAIM FOR DAMAGES UNDER THE INDIAN CIVIL RIGHTS ACT BY A NON-INDIAN AGAINST THE PUEBLO OF SAN JUAN INDIAN TRIBE.

2. IN THE EVENT A FEDERAL COURT DOES HAVE JURISDICTION OVER SUCH A CLAIM, WHETHER THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT AND DISMISSED THE CASE ON THE BASIS THAT PLAINTIFFS' ALLEGATIONS DID NOT RISE TO THE LEVEL OF A CIVIL RIGHTS DEPRIVATION COGNIZABLE UNDER THE INDIAN CIVIL RIGHTS ACT.

## I.

This case arises from the filing of a suit for damages by non-Indians, the Whites, against the Pueblo of San Juan Indian Tribe. Plaintiffs owned in fee simple a plot of land located within the boundaries of the Pueblo of San Juan tribal reservation. The Whites wished to sell the land and in order to bring this about obtained appraisals of its value, and entered into negotiations with a non-party, namely the Delancy Street Foundation, which owned adjacent land. The Whites were asking $140,000 and, according to them, they agreed to a price of $120,000 with the Delancy Street Foundation.

The Indian tribe sought purchase of the property also. It was claimed by the Whites that in an effort to obtain the land, the tribe threatened and intimidated them in order to force them to sell the property to the tribe. The Whites allege that the wrongful conduct by tribal officials, including the excavation of a wide trench across a dirt access road which connected the Whites' property with the adjacent Delancy Street Foundation property, thereby prohibiting access between the properties, caused the Delancy Street Foundation to refuse to close the sale. The Pueblo denies that there was any such wrongful conduct

* Honorable Howard Chilson, Senior United States District Judge for the District of Colora- do, sitting by designation.

or improper motives and alleges that disagreement over the purchase price caused the Delancy Street Foundation's refusal to close the deal.

On May 16, 1979, the Whites conveyed the property to the United States of America in trust for the Pueblo in exchange for $75,000.00. The Pueblo maintains that the fairness of the sales price is supported by an appraisal of the Realty Office, Bureau of Indian Affairs, United States Department of the Interior. This appraisal was in the amount of $76,000.00. However, the Whites allege that as a result of the Pueblo's harassment, threats, and intimidation, they conveyed title to the Pueblo under duress for an inadequate consideration. The Whites do not contend they complained of such duress to the Bureau of Indian Affairs, Department of Interior; nor do they contend that they submitted a formal complaint to the Tribal Council or Tribal Court. Rather, the Whites allege that they were unaware of any tribal redress procedure and complained of the alleged duress and wrongful conduct only to the then-tribal governor Garcia, Congressman Manuel Lujan, and defendant's counsel, Lamar Parrish.

The Whites filed suit in the United States District Court for the District of New Mexico on August 4, 1981. This was over two years after the conveyance of the property to the United States in trust for the Pueblo. The allegation in this complaint was that the wrongful conduct by the tribe and interference with an agreement between the Whites and the Delancy Street Foundation, constituted civil rights deprivations pursuant to § 1302(5) (deprivation of property without due process) and also § 1302(8) (taking of property without just compensation) of the Indian Civil Rights Act, 25 U.S.C. §§ 1301, *et seq.*, (hereinafter the ICRA). The Pueblo counterclaimed in which it alleged misrepresentations by the Whites regarding the good repair of the conveyed property.

The Pueblo filed a motion for summary judgment and to dismiss, alleging that the Whites failed to exhaust administrative and tribal remedies and that the complaint was barred by the doctrine of sovereign immunity. The tribe subsequently filed a supplemental motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted.

The district court dismissed the Whites' claims and found that they failed to state a valid claim under the ICRA, and alternatively, that the doctrine of sovereign immunity barred the action. The court denied the Whites' subsequent motion to stay dismissal pending pursuit of tribal remedies. The Whites now appeal the dismissal of their claims and in the alternative, the court's refusal to retain jurisdiction and stay dismissal until pursuit of tribal remedies.

Inasmuch as it appears from the weight of authority that the jurisdictional issue of sovereign immunity is dispositive of this appeal, the parties' positions regarding this issue only will be discussed here. Accordingly, the parties' contentions regarding whether the activities complained of rise to the level of civil rights deprivations under the ICRA will not be discussed.

The position of the Whites is that they acknowledge that resolution of the tribal sovereign immunity issue involves an application and reconciliation of the decision of the Supreme Court in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) holding that federal courts do not have jurisdiction to hear claims against Indian tribes under the ICRA except in habeas corpus proceedings; and *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682 (10th Cir. 1980), *cert. denied,* 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981), *reh. den.,* 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385. There this court announced an exception to *Santa Clara* when it held that federal jurisdiction existed under the facts of the case. The Whites contend that their suit in federal court against the Pueblo of San Juan Tribe is not barred by the doctrine of sovereign immunity, because they satisfy the three requirements for federal court jurisdiction, allegedly enumerated by this court

in *Dry Creek.* The Whites argue those requirements are:

1. involvement of a non-Indian in the action.

2. the alleged deprivation of an individual's real property interests; and

3. the absence of an adequate tribal remedy.

The Whites interpret *Dry Creek* as limiting the language of *Santa Clara* quoting:

> ... the reason for the limitation [against suing Indian tribes] and the references to tribal immunity [in *Santa Clara* ] also disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian.

*Dry Creek, supra,* at 685. Accordingly the Whites maintain the federal district court possessed jurisdiction to hear their claims against the Pueblo for deprivation of civil rights under the ICRA, because non-Indians were involved and because the controversy did not merely involve internal tribal affairs.

The Whites also maintain that even if *Dry Creek* is interpreted narrowly to permit federal jurisdiction only in the absence of trial remedies, such federal jurisdiction exists under the facts of this case. The Whites allege that the Tribal Code of Law and Order for the People of San Juan, establishing the Tribal Court, was not properly adopted and published. Consequently, they contend, they cannot be barred from federal court for failure to exhaust the tribal remedies, *citing Genuine Parts Company v. Federal Trade Commission,* 445 F.2d 1382, 1394 (5th Cir.1971). This latter case held that a party was not barred from seeking judicial review of an administrative agency determination for failure to exhaust an uncertain, informal administrative remedy, at the time unreported in the Federal Register.

Furthermore, the Whites argue that even if the Code was validly adopted, the existence of the Tribal Court does not defeat federal jurisdiction, because the Tribal Court does not have jurisdiction over this type of civil action involving a non-Indian.

They cite the Code's absence of an explicit jurisdictional grant in civil actions between the tribe and non-Indians and the requirement that in civil actions Tribal Court jurisdiction is predicated on the consent of the non-Indian party. Also argued by the Whites is that even if the Code is read to confer Tribal Court jurisdiction over this type of action, it is probably invalid, because there is no congressional authorization nor is the matter material or essential to tribal self-government, *citing UNC Resources, Inc. v. Benally,* 514 F.Supp. 358 (D.N.M.1981) (holding Navajo tribal Code ineffective as to conferral in tribal courts of civil jurisdiction over non-Indians as defendants). Accordingly, the Whites draw the conclusion that no valid tribal forum exists to redress the alleged deprivations, and, therefore, under the *Dry Creek* exception to Indian sovereign immunity, the federal district court had jurisdiction.

Our conclusion is not in accord with the statement just made because we are of the conclusion that the Indians enjoy immunity in this situation. The Pueblo of San Juan Indians contend that under the explicit holding of the United States Supreme Court in *Santa Clara,* the federal courts lack jurisdiction to hear complaints under the ICRA, except in habeas corpus proceedings. The Pueblo asserts that this case cannot be brought within this court's limited exception to the doctrine of tribal sovereign immunity of *Dry Creek,* because that decision is distinguishable from the present case.

The Pueblo contends that *Dry Creek* must be narrowly interpreted within the doctrinal confines of *Santa Clara,* and as such it merely held that federal jurisdiction existed because no other remedy was available due to the denial of access to tribal forums.

As to the availability of tribal remedies in this case, the Pueblo maintains that a Tribal Court and Tribal Council existed and each possessed jurisdiction and authority to address the Whites' complaints. The Pueblo further contends that the Whites never attempted to avail themselves of these trib-

al forums, choosing instead to go directly to federal court. The Pueblo further asserts that the Whites failed to avail themselves of administrative remedies available with the Department of Interior which held the purchased property in trust for the Pueblo.

## II.

*Santa Clara* is an opinion by the Supreme Court of the United States. The action was brought in federal court against the Santa Clara Pueblo tribe by a female member of the tribe who married a Navajo Indian and had several children. Two years prior to her marriage, the Pueblo passed a membership ordinance barring membership in the Pueblo to children of female members who marry outside the tribe, while permitting membership to children of male members who marry outside the tribe. The denial of such membership in the Pueblo precluded the children from voting in tribal elections, holding secular office, and inheriting their mother's home and possessory interest in the tribal communal lands. She claimed that this tribal ordinance discriminated on the basis of both sex and ancestry in violation of Title II of the ICRA, 25 U.S.C. §§ 1301–1303. She sought injunctive and declaratory relief in a civil action in federal court.

However, the Supreme Court holding was that the ICRA could not be interpreted to impliedly authorize an action in federal courts against an Indian tribe or its officers for deprivation of the Act's substantive rights. The Court applied the longstanding rule that absent congressional authorization Indian tribes are exempt from suit under the doctrine of sovereign immunity. *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). The holding was that nothing on the face of the ICRA purported to waive that sovereign immunity and subject tribes to the jurisdiction of federal courts in civil action for injunctive or declaratory relief. *Santa Clara, supra,* 436 U.S. at 59, 98 S.Ct. at 1677. The only remedy in federal courts expressly authorized by Congress in the ICRA is a writ of habeas corpus to test the legality of a detention by order of an Indian tribe. 25 U.S.C. § 1303. Therefore, the Court concluded that except for habeas corpus proceedings suits against Indian tribes for deprivation of substantive rights recognized in the ICRA are barred by sovereign immunity. *Santa Clara, supra,* 436 U.S. at 59, 98 S.Ct. at 1677.

The case of *Dry Creek* is a post-*Santa Clara* Tenth Circuit decision which recognizes an exception to that decision's bar from suit in federal court pursuant to the doctrine of Indian sovereign immunity. Plaintiffs in *Dry Creek* were non-Indians who owned in fee a parcel of property within the boundaries of the Wind River Reservation of the Shoshone and Arapahoe Indian Tribes. In 1974 plaintiffs built a small inn or hotel, called the Dry Creek Lodge. This was a stopping off place for persons entering wilderness areas. A dirt access road linked the lodge to the highway and traversed the property of the Bonatsies family. This was an Indian family. On the day the lodge formally opened, the Joint Business Council of the two tribes and the superintendent of the Reservation closed the access road at the request of the Bonatsies and blocked ingress and egress from the lodge by way of that road.

The plaintiffs sought a remedy with the tribal court. This the judge refused, claiming the court lacked jurisdiction absent the consent of the Tribal Council. The Council refused consent and directed that the Bonatsies and the plaintiffs resolve their differences through self-help. Plaintiffs' claims against the Indians under the ICRA, originally filed in state court, were then removed to the federal court.

The majority in *Dry Creek* distinguished *Santa Clara* and held that the federal district court possessed jurisdiction to entertain an action for damages and injunctive relief against the Indian tribes pursuant to the ICRA, but Judge Holloway dissented. He concluded that the Supreme Court decision in *Santa Clara* compelled dismissal of the claims against the tribes and precluded the court's creation of an exception to the doctrine of Indian sovereign immunity.

## III.

■ The rationale behind the holding of the Tenth Circuit in *Dry Creek* was based upon what the court regarded as absolute necessity. In other words, to deny relief meant that the persons who had built the hotel could not gain access to it, nor could they attract members of the public. Necessarily the *Dry Creek* opinion must be regarded as requiring narrow interpretation in order to not come into conflict with the decision of the Supreme Court in *Santa Clara.* Accordingly, the *Dry Creek* decision ought to be interpreted to provide a narrow exception to the traditional sovereign immunity bar from suits against Indian tribes in federal courts. In addition, to adhere to the principles of *Santa Clara,* the aggrieved party must have actually sought a tribal remedy, not merely have alleged its futility. This is not merely a requirement that the exhaustion of tribal remedies is a prerequisite to federal jurisdiction, but instead, that tribal remedies, if existent, are exclusive. Judged in this light the Pueblo are immune from this suit for damages under the ICRA and the district court's dismissal of the action is to be affirmed.

It is to be noted that in *Dry Creek* the plaintiffs made an actual attempt to pursue a remedy in the tribal forum. But access was denied. This in itself is a distinguishing factor from *Santa Clara.* Nonetheless in the *Dry Creek* case it was also pointed out that it was outside of internal tribal affairs and concerned itself with an issue with a non-Indian. *Dry Creek, supra,* at 685.

This language just referred to was considered important by the parties in this case; however, there can be no expansive interpretation of *Dry Creek* without opening up the scope of lawsuits against tribes. Throughout our history the tribes have been regarded as not being constrained by the Constitution's limitations on federal and state authority. *Santa Clara, supra; Tal-*

*ton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896). The *Talton* case holds that the fifth amendment did not restrict the governmental powers of the tribes. Additionally, the judicial doctrine of tribal sovereign immunity has long protected Indian tribes from suit in state and federal courts. Tribal immunity, like all aspects of tribal sovereignty, is subject to the superior and plenary control of Congress. But until Congress expressly acts, we are governed by *Santa Clara.* Exercising that plenary authority in 1968, Congress passed the ICRA which provides individual persons with statutory rights similar, but not identical, to many of the parallel constitutional protections enjoyed by individuals against the state and federal governments.[1]

The ICRA, prior to *Santa Clara,* was looked upon as a general waiver of tribal immunity from civil actions in federal courts. The Supreme Court in *Santa Clara* reversed these decisions and held that the ICRA was not to be interpreted as an unequivocal congressional general waiver of tribal immunity in federal courts. *Santa Clara, supra,* 436 U.S. at 59, 98 S.Ct. at 1677. The Supreme Court distinguished the creation of the substantive rights under the ICRA from the provision of a federal forum for the vindication of those rights; the Court concluded that the implication of a federal remedy is not required to give effect to Congress' objective of extending constitutional norms to tribal self-government. *Id.* at 65, 98 S.Ct. at 1680. The Court stated that these substantive rights created by the ICRA must be vindicated through tribal forums which are obliged to apply the statute. *Id.* The Court observed that tribal forums have repeatedly been recognized as adequate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. *Id.* at 66, 98 S.Ct. at 1681. The Court also recognized that non-judicial tribal institutions—such as

---

1. The protections afforded to "any person" under the ICRA are not limited to American Indians, but apply also to non-Indians. *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926 (10th Cir.1975) (Dry Creek I) appealed after remand on other grounds, 623 F.2d 682 (1980); *Dodge v. Nakai,* 298 F.Supp. 17 (D.Ariz.1968).

tribal councils—are competent adjudicatory forums. *Id.*

This broad definition of tribal immunity and the Supreme Court's concern for restricting federal intrusions into tribal self-government would be undermined if this court would further limit the immunity applicable to the tribes. It seems plain that the plaintiffs in this suit fail to come within *Dry Creek* exception to tribal immunity.

The Whites at no time filed a complaint with the Tribal Council or Tribal Court. The evidence merely reveals that they complained once orally to then-Governor Garcia in the spring of 1979 and to the Pueblo's lawyer, Lamar Parrish. The explanation given with respect to their failure to seek tribal remedies is a consequence of their belief that tribal remedies did not exist; but that is not really the equivalent of pursuing the remedy nor can there be any justification for this failure. It was insufficient to allege that they felt that it would be futile to pursue the remedy even if they did believe that. It was not until February 10, 1982 that the Whites contacted the Office of the Tribal Judge of the Pueblo of San Juan and requested a copy of the Code of Law and Order for the People of San Juan Pueblo. *See* Plaintiff's Supplemental Memorandum of Authority in Response to the Defendant's Motion for Summary Judgment and Motion to Dismiss (ROA at 66). No explanation for their apparent failure to make a request prior to the initiation of this action in federal court is given.

The receipt of the Tribal Code certainly put the Whites on notice of the possible existence of a forum for the hearing of their complaint. However, it is uncontested that they made no affirmative steps to seek redress through the tribal judiciary. The Whites chose instead to continue this action in federal court, claiming that their refusal to pursue a tribal remedy is excusable on the basis of futility. But this is not the law in the Tenth Circuit; speculative futility is not enough to justify federal jurisdiction. The tribal remedy must be shown to be nonexistent by an actual attempt before a federal court will have jurisdiction. The contention of the Whites that a valid tribal remedy is nonexistent is a contention without any merit.

In *Santa Clara,* the Supreme Court held that the substantive rights against Indian Tribes created by the ICRA had to be vindicated through tribal forums which are obliged to apply the statute and recognize the rights. *Santa Clara, supra,* at 65, 98 S.Ct. at 1680. Accordingly federal law requires a waiver of tribal immunity in tribal courts for action under the ICRA. The Pueblo Code explicitly permits such waiver when required by federal law. Code, Chap. I, Section III. It is also clear that the Code specifically asserts civil jurisdiction over non-Indians within the Pueblo boundaries. The Whites contend that the Code's attempted extension of civil authority over non-Indians is ineffective, because it requires non-Indians to consent to the assertion of jurisdiction and to stipulate that they agree to be bound by the Tribal Court's decisions. Apparently, the Whites believe it is improper to compel them to consent to the Tribal Court's jurisdiction; however, this is the inescapable consequence of *Santa Clara.* When they refused to comply with the tribal adjudicatory procedure based on their objection to the adequacy of the procedure, as is shown to have occurred here, we find ourselves powerless to pursue the remedy in federal court as proposed by the Whites. This would be contrary to the restrictive holding by the Supreme Court in *Santa Clara.*

The judgment of the district court is, therefore, affirmed.