BANK OF OKLAHOMA, National Association, Plaintiff–Appellant,

v.

MUSCOGEE (CREEK) NATION; Indian Country USA, Inc., Defendants–Appellees.

BANK OF OKLAHOMA, National Association, Plaintiff–Appellee,

v.

MUSCOGEE (CREEK) NATION, Defendant–Appellee,

Indian Country USA, Inc., Defendant–Appellant.

Nos. 91–5017, 91–5018.

United States Court of Appeals, Tenth Circuit.

Aug. 13, 1992.

---

Marilyn M. Wagner (C.S. Lewis, III, with her on the briefs) of Robinson, Lewis, Orbison, Smith & Coyle, Tulsa, Okl., for plaintiff-appellant/cross-appellee Bank of Oklahoma.

Roger P. Cox (Gregory D. Barton with him on the briefs) of Harding & Ogborn, Lincoln, Neb., for defendant-appellant Indian Country, U.S.A., Inc.

G. William Rice (N. Brent Parmer and Gregory H. Bigler with him on the brief) of G. William Rice, P.C., Cushing, Okl., for defendant-appellee Muscogee (Creek) Nation.

Before McKAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

McKAY, Chief Judge.

These cases arise from an interpleader action filed by Bank of Oklahoma ("the Bank") against Muscogee (Creek) Nation ("the Nation") and Indian Country U.S.A., Inc. ("ICUSA"). ICUSA has cross-claimed against the Nation. The district court dismissed both the interpleader and the cross-claim based on the Nation's sovereign immunity and requirements that the parties exhaust remedies available through tribal courts. We affirm for substantially the reasons given by the district court.

ICUSA entered into an agreement with the Nation in 1984 to manage the Nation's bingo hall in Tulsa. Three accounts were set up at the Bank with funds related to the bingo enterprise. In 1989, the Nation perceived a breach in the agreement with ICUSA. In rapid succession, the following legal maneuvers were accomplished: The Nation's tribal court issued temporary restraining orders (TROs) ousting ICUSA from the bingo facility and restraining the Bank from releasing funds from the accounts to ICUSA. The Bank interpled in federal district court against ICUSA and the Nation. ICUSA challenged the Nation's TRO in tribal district court, where the judge ruled in favor of the Nation and granted a preliminary injunction against ICUSA. ICUSA filed an interlocutory appeal of this decision. After these tribal court proceedings and pursuant to the Bank's interpleader, ICUSA filed a cross-claim against the Nation in federal district court. ICUSA then informed the Nation's supreme court, before which the interlocutory appeal was pending, that it did not wish to proceed with the appeal. The Nation filed motions in federal court to dismiss both the interpleader and the cross-claim.

The Bank, the Nation, and ICUSA submitted briefs in federal district court concerning the Nation's motions to dismiss. A magistrate heard oral arguments and issued a report and recommendations, after which the district court heard oral arguments. The district court adopted the magistrate's report and recommendations, granting the Nation's motions to dismiss based on sovereign immunity and related requirements that the Bank and ICUSA exhaust tribal remedies. The Bank and ICUSA now appeal from the district court's dismissal of the interpleader and cross-claim. We consider each action in turn.

■ The district court and magistrate dismissed the interpleader after finding that the Nation's sovereign immunity divested federal courts of subject matter jurisdiction over the action. We review dismissal for lack of subject matter jurisdic-

tion de novo. *Williams v. United States,* 957 F.2d 742, 743 (10th Cir.1992).

▮ The basic law of sovereign immunity for Indian tribes is quite clear: Suits against Indian tribes are barred by sovereign immunity absent either a clear waiver by the tribe or congressional abrogation. *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* — U.S. ——, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,* 883 F.2d 890, 892 (10th Cir.1989); *White v. Pueblo of San Juan,* 728 F.2d 1307, 1311 (10th Cir.1984). The Bank argues for an exception to this well settled law in the case of an interpleader. For substantially the reasons given by the district court and magistrate, we hold that no such exception is warranted.

▮ The Bank argues that it will be denied due process if conflicting claims to the funds are not determined in federal court, but it cites neither legal doctrine nor case law to support this point. We find the bare argument unpersuasive and point out that the Bank may seek determination in the Nation's tribal court of the Bank's obligations regarding any conflicting claims to the accounts.

The Bank next argues that commercial relations between Indian tribes and non-Indian banks will be chilled if the district court's dismissal is affirmed. This policy argument precisely misses the point of sovereign immunity, which is the power of self-determination. We decline the Bank's invitation to second-guess the wisdom of the Nation's business decisions under the guise of judicial review.

The Bank also urges an analogy between the Nation and a foreign sovereign pursuing commercial activity within the United States. Not only does the Bank fail to establish a factual predicate for the analogy by showing that the Nation, rather than ICUSA, conducted any business at the Bank, but it also fails to cite legal precedent for applying the analogy. In fact, the Supreme Court has explicitly stated that

Indian tribes are not foreign sovereigns, but are "domestic dependent nations." *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 25, 31, 8 L.Ed. 25 (1831). We reject the Bank's proposed analogy as inconsistent with the law.

▮ The Bank next urges this court to balance the importance of the Nation's sovereign immunity against the national interest in protecting banks from multiple legal claims. The Supreme Court has allowed a balancing test where "overriding interests of the National Government" are involved. *Washington v. Confederated Tribes,* 447 U.S. 134, 153–54, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980) (listing three examples where tribal sovereignty is inconsistent with national interests: where tribes seek to engage in foreign relations, alienate lands to non-Indians without federal consent, and prosecute non-Indians in tribal courts which do not afford full Bill of Rights protection). We agree with the district court and magistrate that any national interest in mechanisms for banks to interplead funds does not rise to the level of the overriding interests listed in *Washington.* Thus we do not apply a balancing test here.

▮ The Bank argues that its only remedy is in federal court and that tribal courts have no jurisdiction over this case. In *National Farmers Union Ins. Co. v. Crow Tribe,* 471 U.S. 845, 856, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985), the Supreme Court held that the question of whether tribal courts have jurisdiction over non-Indians in civil cases should first be addressed in tribal court. The law of this circuit is that a federal court should not hear a challenge to tribal court jurisdiction until tribal court remedies have been exhausted. *Tillett v. Lujan,* 931 F.2d 636, 640–41 (10th Cir.1991); *Superior Oil Co. v. United States,* 798 F.2d 1324, 1328–29 (10th Cir.1986). The Supreme Court has defined exhaustion of tribal court remedies to include appellate review within the tribal court system. *Iowa Mut. Ins. Co. v. La-Plante,* 480 U.S. 9, 17, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987). The law is thus quite clear: For reasons of comity, federal

courts should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted.

The Bank claims that there is no tribal jurisdiction in this case because the banking activity in question took place off tribal land. As stated in *National Farmers, Tillett,* and *Superior Oil,* however, this jurisdictional argument should first be heard in tribal court.

The Bank argues that it comes under various exceptions to this doctrine. It first urges this court to apply the narrow exception to the exhaustion requirement which this court granted in *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682, 685 (10th Cir.1980), *cert. denied,* 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981). That exception depended, however, on the finding that no tribal court forum existed for the non-Indian party. As explained in our later case, *White v. Pueblo of San Juan,* 728 F.2d 1307, 1313 (10th Cir.1984), "speculative futility is not enough to justify federal jurisdiction." The Bank cannot simply assert that it is not subject to tribal court jurisdiction; rather, it must actually seek adjudication of this issue in tribal court.

■ The Bank next claims that it is excused from the exhaustion requirement under *National Farmers,* which states that exhaustion is not required "where the action is patently violative of express jurisdictional prohibitions." *National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. The Bank asserts that this language applies here by speculating that the Nation's TRO restraining the Bank from releasing funds to ICUSA was beyond the Nation's jurisdiction. However, the Bank has pointed to no "express jurisdictional prohibition" which the TRO patently violated. We are not persuaded that the *National Farmers* language excuses the Bank from the exhaustion requirement in these circumstances.

Finally, the Bank argues that dismissing the federal court case unfairly leaves the Bank without a remedy. For reasons already given, we agree with the district court and magistrate that the Bank must exhaust tribal court remedies before bringing this controversy to federal court. Unless and until the Bank has sought resolution in tribal court, its claim of having no available remedy rings hollow.

■ We affirm the district court's dismissal of the interpleader action as to the Nation, based on sovereign immunity and the doctrine of comity. With the Nation dismissed as a party, the interpleader action does not involve "claimants ... of diverse citizenship" as required for federal diversity jurisdiction under 28 U.S.C. § 1335(a)(1) (1988). We therefore affirm dismissal of the entire interpleader action for lack of federal jurisdiction.

The Nation also asserts that sovereign immunity bars ICUSA's cross-claim. ICUSA urges this court to apply the *Dry Creek* exception to sovereign immunity, and in the alternative to find that the contract between ICUSA and the Nation contains a waiver of sovereign immunity.

■ ICUSA presented evidence to the magistrate that the tribal court judge was biased against ICUSA. On appeal, ICUSA offers additional evidence of the Nation's alleged bad faith, arguing that the Nation's actions rise to such a level that no meaningful remedy is available to ICUSA through tribal courts. ICUSA cites *Dry Creek* for the proposition that an exception to sovereign immunity can be made in order to provide a forum to settle the dispute. As this court explained in *White v. Pueblo of San Juan,* 728 F.2d 1307 (10th Cir.1984), the *Dry Creek* holding is a "narrow exception" to sovereign immunity based on a finding of "absolute necessity." *White,* 728 F.2d at 1312. ICUSA has not shown that it will be without a forum to settle this dispute unless an exception to sovereign immunity is found. In fact, the record shows that ICUSA began an interlocutory appeal within the tribal court system but later decided of its own volition not to pursue it. The *Dry Creek* exception to sovereign immunity clearly does not apply where a party voluntarily chooses not to pursue its case in tribal court.

ICUSA next argues that it is not subject to the exhaustion requirement stated in *National Farmers* because the Nation has asserted jurisdiction over ICUSA in bad faith. *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 856–57 n. 21, 105 S.Ct. 2447, 2454 n. 21, 85 L.Ed.2d 818 (1985) (exception to exhaustion requirement where "assertion of tribal jurisdiction ... is conducted in bad faith"). ICUSA relies on this court's decision in *Superior Oil Co. v. United States*, 798 F.2d 1324 (10th Cir.1986), for the proposition that the district court should determine the question of bad faith. We must construe *Superior Oil* in light of the Supreme Court's later decision in *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). *Iowa Mutual* required a non-Indian party alleging bias and incompetence on the part of the tribal court to litigate these issues in tribal court. *Id.* at 19, 107 S.Ct. at 978 (allegations did not trigger *National Farmers* exceptions to the exhaustion requirement). We agree with the district court and magistrate that *Iowa Mutual* requires ICUSA to exhaust tribal remedies before seeking relief in federal court.

Finally, ICUSA argues that in the written agreement regarding management of the bingo hall, the Nation waived sovereign immunity in federal court. The Nation claims that it waived sovereign immunity only as to tribal court and not as to federal court.

The Supreme Court has addressed the issue of what constitutes an effective waiver of sovereign immunity by an Indian tribe: A waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (citations omitted). The district court and magistrate applied this test of an "unequivocally expressed" waiver to the agreement between ICUSA and the Nation and found that the contract terms were ambiguous because they mentioned tribal court but not federal district court. The district court dismissed ICUSA's cross-claim based on the finding that the Nation had not effectively waived immunity from suit in a non-tribal court.

Determining whether a contract is ambiguous is a matter of law which we review de novo. *In re Amarex*, 853 F.2d 1526, 1530 (10th Cir.1988). Interpretation of an unambiguous contract is also a question of law which we review de novo. *Id.* at 1529.

The agreement between ICUSA and the Nation contains the following provisions:

3. JURISDICTION

If a court action is brought by either party to obtain a declaration of rights or duties under this Agreement, it is agreed that such action shall be brought in the Court of the Muscogee (Creek) Nation....

....

5. SOVEREIGN IMMUNITY

Tribe agrees to be subject to suit by the Manager to declare rights and duties under this Agreement....

Brief of Appellant ICUSA, Appendix Vol. I, at 27–28.

We find, as did the district court and magistrate, that these provisions do not satisfy the *Santa Clara* requirement of an "unequivocally expressed" waiver of sovereign immunity. When read together, the contract clauses are at best ambiguous regarding sovereign immunity in any court except tribal court. We hold that the contract provisions do not reach the high threshold required by *Santa Clara* for clear expression of the Nation's waiver of sovereign immunity. Therefore, we affirm the district court's dismissal of the cross-claim based on sovereign immunity.

AFFIRMED.