Mary Zeldo WILSON, Plaintiff,

v.

The TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, the Turtle Mountain Housing Authority, and the United States of America, Defendants (2 cases).

Civ. Nos. A78–2020, A78–2021.

United States District Court,
D. North Dakota,
Northeastern Division.

Oct. 31, 1978.

As Amended Nov. 13, 1978.

Larry M. Baer, Ackre & Baer, Cando, N. D., for plaintiff.

Leo Broden, Devils Lake, N. D., for The Turtle Mountain Band of Chippewa Indians and The Turtle Mountain Housing Authority.

Herbert A. Becker, Asst. U. S. Atty., Fargo, N. D., for the U. S.

## ORDER

BENSON, Chief Judge.

The above-entitled actions were brought to redress the alleged deprivation of plaintiff's constitutional rights which allegedly occurred through defendants' actions in evicting plaintiff from her home. The actions were brought under Subchapter I of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, with jurisdiction asserted under 28 U.S.C. § 1343. The actions were also brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Plaintiff seeks damages in Civil No. A78–2020 and injunctive relief in A78–2021.

Plaintiff alleges in both complaints that she is an Indian, that she is the chairwoman of the Tribal Council of the Little Shell Pembina Chippewa Band of North Dakota of the Chippewa Tribe of Indians, and that she resides on land adjacent to the Turtle Mountain Indian Reservation, which land was purchased by the United States and is held in trust for unenrolled members of the Turtle Mountain Tribe. She alleges defendant Turtle Mountain Housing Authority, pursuant to a policy to eliminate all services to members of the Little Shell Band, initiated a civil action in the Turtle Mountain Tribal Court to evict plaintiff from her home.[1] She further alleges defendant Turtle Mountain Band of Chippewa Indians, through its tribal court, ordered her eviction for "failure to pay rents" and found her guilty of the tribal offense of "holding over after termination of lease." She alleges the tribal court acted without jurisdiction and pursuant to an express tribal policy to force Little Shell Band members from their ancestral homes. Plaintiff further alleges defendant United States by and through law enforcement officers of the Bureau of Indian Affairs forcibly executed the order for eviction, and that defendants at all times knew she was not an enrolled member of the Turtle Mountain Band and was not living within the boundaries of the Turtle Mountain Indian Reservation.

Defendants Turtle Mountain Band of Chippewa Indians and Turtle Mountain Housing Authority have moved for judgment on the pleadings in both actions on the ground that this court has no jurisdiction over the claims asserted against the moving defendants.

## I. *Indian Civil Rights Act*

Subsequent to the filing of the pleadings in the instant actions, the Supreme Court decided in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), that civil suits against an Indian tribe under Subchapter I of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303,[2] are

---

1. Plaintiff alleges in her complaint in Civil No. A78–2021 that she purchased a home in January, 1972 through the "Turnkey III" homeownership program of the Department of Housing and Urban Development, which program is administered locally by defendant Turtle Mountain Housing Authority, and that at all times relevant she had a valid lease to the homesite. She further alleges that in protest of the substandard workmanship and materials used in her home, she ceased paying monthly installments on the mortgage.

2. Subchapter I of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, provides:
   § 1301. Definitions

For purposes of this subchapter, the term—
   (1) "Indian tribe" means any tribe, band, or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government;
   (2) "powers of self-government" means and includes all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses; and
   (3) "Indian court" means any Indian tribal court or court of Indian offense.

barred by the tribe's sovereign immunity. 436 U.S. at 56–58, 98 S.Ct. at 1676, 56 L.Ed.2d at 115.

In *Martinez,* a female member of the Santa Clara Pueblo Tribe and her daughter brought an action against the tribe and its governor seeking declaratory and injunctive relief against enforcement of a tribal ordinance denying membership in the tribe to children of female members married to nonmembers, but extending membership to male members married to nonmembers, on the ground that the ordinance violated the equal protection provision of the ICRA, 25 U.S.C. § 1302(8).

The Court noted that Indian tribes have long been recognized as possessing many of the attributes of sovereignty and have the power of self-government unless that power is restricted by Congress. With respect to sovereign immunity from suit, the Court stated:

Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But "without congressional authorization," the Indian Nations are exempt from suit."

§ 1302. Constitutional rights
No Indian tribe in exercising powers of self-government shall—
(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;
(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
(3) subject any person for the same offense to be twice put in jeopardy;
(4) compel any person in any criminal case to be a witness against himself;
(5) take any private property for a public use without just compensation;
(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the wit-

436 U.S. at 58, 98 S.Ct. at 1677, 56 L.Ed.2d at 115 (citations omitted).

The Court noted the well-settled rule that a waiver of sovereign immunity must be express and may not be implied. By enacting Subchapter I of the ICRA Congress imposed restrictions upon tribal government, but the Court found nothing in Subchapter I which could be read as a general waiver of tribal sovereign immunity.

The exclusive remedy for enforcement of the provisions of Subchapter I in the federal courts is a habeas corpus action, which lies only against the individual detaining the petitioner and not against the tribe. Therefore, the Court concluded "that suits against the tribe under the ICRA are barred by its sovereign immunity from suit." *Id.*

Plaintiff argues the decision in *Martinez* should be applied only to intratribal disputes, and since the instant cases involve alleged violations of the ICRA by a tribe against a member of another tribe, the holding in *Martinez* may be distinguished.

This court finds no such limitation in the Supreme Court's opinion. The Court stated in its opinion:

nesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;
(7) require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of six months or a fine of $500, or both;
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
(9) pass any bill of attainder or ex post facto law; or
(10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.
§ 1303. Habeas corpus
The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.

Tribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of *both Indians and non-Indians.*

*Id.* 436 U.S. at 65, 98 S.Ct. at 1680–1681, 56 L.Ed.2d at 119–120 (emphasis added).

This language clearly indicates the Supreme Court intended to make no distinction in its holding on the basis of the membership status of the plaintiff in an action under the ICRA.

 The claims asserted by plaintiff against defendants Turtle Mountain Band and Turtle Mountain Housing Authority under the Indian Civil Rights Act are barred by the tribe's sovereign immunity.

### II. *42 U.S.C. § 1983*

■ Plaintiff may not assert claims against the moving defendants under § 1983 for two reasons. First, the tribe's sovereign immunity from suit is a bar to an action under § 1983 as well as under the Indian Civil Rights Act.

In addition, the jurisdictional prerequisite of an action under "color of state law," which must be present for a cause of action to lie under § 1983, is lacking. On the face of plaintiff's complaints, it is clear that neither the Turtle Mountain Band nor Turtle Mountain Housing Authority was acting "under color of state law."

### III. *Federal Tort Claims Act*

■ A cause of action under the Federal Tort Claims Act properly lies only against the United States. Since neither the Turtle Mountain Band nor the Turtle Mountain Housing Authority are proper defendants in an action brought under the Federal Tort Claims Act, the court assumes plaintiff intended to assert its claims under the statute only against the United States.

IT IS ORDERED that the motions of defendants Turtle Mountain Band of Chippewa Indians and Turtle Mountain Housing Authority for judgment on the pleadings in both Civil No. A78–2020 and Civil No. A78–2021 are granted.

IT IS FURTHER ORDERED that judgment be entered dismissing plaintiff's complaints in Civil No. A78–2020 and Civil No. A78–2021 against the Turtle Mountain Band of Chippewa Indians and the Turtle Mountain Housing Authority.