**DRY CREEK LODGE, INC., a Wyoming Corporation, et al., Plaintiffs-Appellants,**

v.

**ARAPAHOE AND SHOSHONE TRIBES, Defendants-Appellees.**

No. 78–1999.

United States Court of Appeals, Tenth Circuit.

Argued March 11, 1980.

Decided June 20, 1980.

Rehearing Denied July 18, 1980.

John R. Hursh of Central Wyoming Law Associates, P. C., Riverton, Wyo. (G. L. Spence of Spence, Moriarity & Schuster, Jackson, Wyo., with him on brief), for plaintiffs-appellants.

Harry R. Sachse of Sonosky, Chambers & Sachse, Washington, D. C. (Marvin J. Sonosky of Sonosky, Chambers & Sachse, Washington, D. C., with him on brief), for defendant-appellee Shoshone Tribe.

R. Anthony Rogers of Wilkinson, Cragun & Barker, Washington, D. C., on brief, for defendant-appellee Arapahoe Tribe.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

SETH, Chief Judge.

The case originally came to this court upon a dismissal of plaintiffs' complaint for damages for lack of jurisdiction. We reversed and remanded the case for trial. *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926 (10th Cir.). The previous opinion contains the holdings as to parties and disposition of several issues.

Upon remand the case was tried on the merits. The jury returned a verdict for plaintiffs against the defendant Tribes only, judgment was entered, and costs were assessed against the Tribes. On motion by defendant Tribes the trial court granted a new trial on the ground that the jury did not properly handle the issue of damages.

Before the case was retried the Supreme Court handed down *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106. The trial court thereupon dismissed the action on the theory that *Santa Clara* had decided the issue of jurisdiction. The plaintiffs have taken this appeal.

The facts are, of course, the same as on the original appeal, and the case is again before us following a dismissal for lack of jurisdiction.

The facts are set out in our previous opinion but some restatement appears to be useful. Plaintiffs' land is within the exterior boundaries of the Wind River Reservation of the Shoshone and Arapahoe Indians in Wyoming. The reservation is large and the town of Riverton and other settlements are within its boundaries. Many more non-Indians than Indians live within the boundaries. There are a large number of patented tracts owned in fee by non-Indians not including the property in Riverton. The reservation boundaries have changed substantially from time to time.

The lands of plaintiff corporation were patented to a predecessor in title in 1924. There was a small road providing access from the land of Dry Creek Lodge to the principal highway. This had been used by plaintiffs and other persons for access to

the fee land and other lands for a period of some eighty years.

Plaintiffs Cook, who are non-Indians, had owned the 160-acre tract for about ten years and had lived there. They decided to build a guest lodge for hunting, and consulted the superintendent of the reservation about the matter. He advised them that projects of that type were encouraged to provide employment. He also stated that there would be no access problem. A license to plaintiffs Cook was issued for the business. The individuals then formed Dry Creek Lodge, Inc. to build the facilities. This was done with a SBA loan. The lodge was completed and opened, but the next day the Tribes closed the road at the request of a nearby Indian family, the Bonatsies. The access road had crossed an allotment belonging to this family. Apparently the plaintiffs have lost the property by foreclosure. The access road was closed in 1974.

The Tribes have a Joint Business Council which is composed of the Business Councils of each Tribe. These Councils are the legislative, executive and judicial bodies for the Tribes. The Tribal Business Councils are elected by members of each Tribe. The record contains the minutes of several meetings of the Joint Council relative to closing the business and the access road. The Council directed that access to the Dry Creek Lodge be prevented by the federal officers, and the Bonatsies were apparently to erect the barricade. With the road blocked the persons on the Dry Creek land could not get out and were for all practical purposes confined there until a federal court issued a temporary restraining order. Thereafter the plaintiffs sought a remedy with the tribal court, but were refused access to it. The judge indicated he could not incur the displeasure of the Council and that consent of the Council would be needed. 25 C.F.R. § 11.22. The consent was not given. The state court cases were apparently removed to the federal court. In the federal court the defendants urged that there was no remedy—no jurisdiction. The defendants again assert there is no remedy in the federal court by reason of the *Santa*

*Clara* case. The Tribal Business Council, according to the minutes, directed that the differences between the Bonatsie family and the plaintiffs should be settled by self-help, and this was done. The plaintiffs, however, did not respond in the same way. The defendants argue here, as they did in the trial court, that the plaintiffs have no remedy. There is no forum where the dispute can be resolved and the personal and property rights asserted by plaintiffs be considered.

Before considering the *Santa Clara* opinion we would like to look at one aspect of *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209. This relates to the sovereignty holding by the Ninth Circuit. The circuit had in substance held that the authority there in issue was presumed to be in the Tribe unless Congress had acted. The majority in the circuit opinion posed the question as to whether Congress had taken away the sovereignty of the Tribe as to the matter in issue. The Supreme Court reversed and turned the matter around. The Court said:

> "But the tribes' retained powers are not such that they are limited only by specific restrictions in treaties or congressional enactments. As the Court of Appeals recognized, Indian tribes are prohibited from exercising both those powers of autonomous states that are expressly terminated by Congress *and* those powers '*inconsistent with their status.*'" (Emphasis supplied.)

The Court in *Oliphant* also said:

> "Protection of territory within its external political boundaries is, of course, as central to the sovereign interests of the United States as it is to any other sovereign nation. But from the formation of the Union and the adoption of the Bill of Rights, the United States has manifested an equally great solicitude that its citizens be protected by the United States from unwarranted intrusions on their personal liberty."

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106, was an

action by a member of the Tribe challenging the Tribe and its officials as to the criteria used to determine property ownership and tribal membership. It was entirely an internal matter concerning tribal members and a matter of very great importance to the individuals. Injunctive and declaratory relief were sought. The members of the Tribe who were seeking relief also had access to their own elected officials and their tribal machinery to settle the problem. The Supreme Court held that the Indian Civil Rights Act could not be used by the plaintiffs under such circumstances to obtain an injunctive remedy against the Tribe. There was no "reservation" involved in *Santa Clara* as the lands had been granted to Santa Clara as a pueblo by the Governments of Spain or Mexico long before the American occupation. The issue and control was on the basis of ownership, tribal membership, and tribal use of its own lands. The problem was thus strictly an internal one between tribal members and the tribal government relating to the policy of the Tribe as to its membership. Of course, there were no non-Indians concerned.

By the decision in *Santa Clara* the tribal members seeking injunctive relief under the Indian Civil Rights Act were in substance directed to the remedies available to them in their own tribal courts and from the officials they had elected. Much emphasis was placed in the opinion on the availability of tribal courts and, of course, on the intratribal nature of the problem sought to be resolved. With the reliance on the internal relief available the Court in *Santa Clara* places the limitations on the Indian Civil Rights Act as a source of a remedy. But in the absence of such other relief or remedy the reason for the limitations disappears.

The reason for the limitations and the references to tribal immunity also disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian.

It is obvious that the plaintiffs in this appeal have no remedy within the tribal machinery nor with the tribal officials in whose election they cannot participate. The record demonstrates that plaintiffs sought a forum within the Tribes to consider the issue. They sought a state remedy and sought a remedy in the federal courts. The limitations and restrictions present in *Santa Clara* should not be applied. There has to be a forum where the dispute can be settled.

The plaintiffs alleged that their personal and property rights under the Constitution had been violated by the defendants. A jury so found and awarded damages. There must exist a remedy for parties in the position of plaintiffs to have the dispute resolved in an orderly manner. To hold that they have access to no court is to hold that they have constitutional rights but have no remedy. The self-help which was suggested to shut down plaintiffs' "business," according to the Council minutes, and which was carried out with the help of the federal police, does not appear to be a suitable device to determine constitutional rights.

The Judgment and Order are reversed and the case is remanded for a new trial on the issue of damages.

HOLLOWAY, Circuit Judge, dissenting:

I respectfully dissent.

To me this is a most disturbing case because of the result I feel compelled to reach. The jury found a violation of the plaintiffs' civil rights recognized by § 1302 of the Indian Civil Rights Act, under most distressing circumstances. And yet it seems we must say that the doors are closed against any orderly redress for the wrongs. State and federal courts are barred by the immunity doctrine from hearing the claims and access was denied to the tribal court, as the majority opinion points out. Nevertheless, I must reluctantly agree with the trial court's conclusion that the *Santa Clara* opinion compels dismissal as to the sole remaining defendants, the tribes.

It is true, as the majority opinion emphasizes, that the *Santa Clara* case arose from a controversy of an intratribal nature where a remedy was sought by a person who could participate in the elective process

and who had access to the tribal courts and other tribal machinery—a far cry from this case. The Supreme Court, however, laid down its holding in *Santa Clara* in broad terms of the tribes' traditional immunity from suit, of the absence in the Indian Civil Rights Act of provisions subjecting the tribes to federal court jurisdiction in civil actions for injunctive or declaratory relief, and of the exclusivity of the grant of federal habeas jurisdiction in § 1303, which was viewed as a deliberate failure to provide other remedies. The Court rejected the claim of jurisdiction, concluding that:

.   .   . unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers.   .   .   . (436 U.S. at 72, 98 S.Ct. at 1684).

I must agree that these damage claims are likewise barred by the immunity doctrine, unless and until Congress provides otherwise. *Wilson v. Turtle Mountain Band of Chippewa Indians, et al.*, 459 F.Supp. 366, 369 (D.N.D.). Thus I am constrained to dissent.