**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 1 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ORDINANCE 59 ASSOCIATION,

     Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR SECRETARY, in his
official capacity, a.k.a. Bruce Babbitt;
BUREAU OF INDIAN AFFAIRS;
EASTERN SHOSHONE TRIBE
BUSINESS COUNCIL, JOHN
WASHAKIE; VERNON HILL; BUD
MCADAMS; MIKE LAJEUNESSE;
IVAN POSEY, and JOHN WADDA,
individually, and as EASTERN
SHOSHONE TRIBE BUSINESS
COUNCIL MEMBERS,

     Defendants-Appellees.

No. 97-8079

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 96-CV-327)

---

Timothy C. Kingston, Graves, Miller & Kingston, Cheyenne, Wyoming, for Plaintiff-Appellant.

Marta Hoilman (Lois J. Schiffer, Assistant Attorney General; David D. Freudenthal, United States Attorney, District of Wyoming; Nicholas Vassallo, Assistant United States Attorney, District of Wyoming; and M. Alice Thurston, Attorney, Department of Justice,

Washington, D.C., with her on the brief), Attorney, Department of Justice, Environment and Natural Resources Division, Washington, D.C., for Defendants-Appellees.

John C. Schumacher (Michael Chiropolos with him on the brief), Law Office of John Schumacher, Fort Washakie, WY, for Defendant-Appellee Eastern Shoshone Tribe.

---

Before **PORFILIO**, **MCWILLIAMS** and **ANDERSON**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

The Ordinance 59 Association is composed of 43 individuals who applied for membership in the Eastern Shoshone Tribe (Tribe). The Association sought declaratory and injunctive relief against the Eastern Shoshone Tribe Business Council and the members of the Business Council, in their individual and official capacities, (collectively, tribal defendants); and the Secretary of the Department of the Interior and the Bureau of Indian Affairs, (collectively, federal defendants) for failing to enroll members of the Association in the Tribe. The district court dismissed the claims for lack of subject matter jurisdiction. Further, plaintiffs failed to state a claim upon which relief may be granted against the federal defendants. We affirm.

Our jurisdiction arises under 28 U.S.C. § 1291. We review de novo the trial court's decision to dismiss under either Fed. R. Civ. P. 12(b)(1) or 12(b)(6), *Pelt v. Utah*, 104 F.3d 1534, 1540 (10th Cir. 1996), and its determinations on sovereign immunity.

*Fletcher v. United States*, 116 F.3d 1315, 1323-24 (10th Cir. 1997). Our independent determination of the issues uses the same standard employed by the district court. *Olguin v. Lucero*, 87 F.3d 401, 403 (10th Cir. 1996). Accepting the complaint's allegations as true, *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir. 1995), we consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Swoboda v. Dubach*, 992 F.2d 286, 288 (10th Cir. 1993).

## Background

The Shoshone Tribe of the Wind River Reservation is a sovereign government recognized by the United States with authority over its members and its territory. 62 Fed. Reg. 55270, 55237 (1997). The General Council, comprising all adult tribal members, is the Tribe's supreme legislative body and exercises authority over all aspects of tribal governance. Shoshone Indian Tribe Resolution No. 6298 (1988). The General Council has delegated to a six-member Business Council authority to make legislative decisions on a day-to-day basis. Certain matters, including enrollment, remain exclusively under the jurisdiction of the General Council. The Shoshone and Arapahoe Tribal Court (Tribal Court) is a court of limited jurisdiction with authority over matters designated by tribal law and approved jointly by the Shoshone and Arapahoe Tribes of the Wind River Reservation.

In 1988, the General Council passed Enrollment Ordinance No. 59 providing criteria and procedures for establishing tribal membership. To enroll in the Tribe, an

individual had to submit an application to the Shoshone Enrollment Committee. The Enrollment Committee would then review the applications for sufficiency and forward them with recommended dispositions to the Business Council. Ordinance 59 empowered the Business Council to make preliminary acceptances or rejections or table any application. Preliminary dispositions were posted for thirty-days; during that time enrolled tribal members could submit a written protest on any preliminary action. Applicants had the right to appeal to the General Council if the Business Council took any adverse action on their application. Jurisdiction over these appeals was vested exclusively in the General Council, and the General Council's decision on appeal was final.

By late 1988, the Business Council preliminarily approved 81 applications under Ordinance 59. Approximately 382 additional applications were in various stages of consideration. In December 1988, the Business Council voted to table action on all pending applications. Two months later, the General Council repealed Ordinance 59. The Business Council has not since submitted any of the 463 applicants under Ordinance 59 (Ordinance 59 applicants)[1] to the Bureau of Indian Affairs (BIA) as enrolled members of the Tribe.

---

[1] Ordinance 59 applicants refers to a group of 81 individuals whose applications were preliminarily approved by the Business Council *plus* the 382 individuals whose applications were tabled by the Business Council (463 persons in all). The Ordinance 59 Association, plaintiff-appellant in this case, comprises only 43 individuals out of the 463 Ordinance 59 applicants.

Enrolled tribal members filed an action in Tribal Court seeking to compel the Business Council to enroll the Ordinance 59 applicants. The Tribal Court granted summary judgment to the plaintiffs and ordered the Business Council to enroll the applicants. The Tribal Court of Appeals affirmed and then denied the Business Council's petition for reconsideration. The Business Council neither processed the outstanding applications nor enrolled any of the Ordinance 59 applicants as tribal members. The Tribal Court then found the Business Council in contempt for failing to abide by its order, and the Tribal Court of Appeals affirmed. On March 10, 1994, the Tribal Court issued an Order on Remand that the Ordinance 59 applicants "are enrolled members of the [Tribe]." The Business Council has not submitted any of the Ordinance 59 applicants to the BIA as enrolled members of the Tribe.

While the Tribal Court litigation was proceeding, the Tribal Court plaintiffs brought an action in federal court to order the federal defendants to enroll the Ordinance 59 applicants in the Tribe. The federal defendants argued the dispute was not ripe for adjudication because the Tribe had never officially asked the BIA to act on the applications. However, after the Tribal Court ordered the Ordinance 59 applicants were enrolled members of the Tribe, the parties stipulated to dismiss the federal suit without prejudice.

Three years later, counsel for 43 of the Ordinance 59 applicants[2] wrote to the Superintendent of the BIA on the Wind River Reservation and requested information on obtaining BIA recognition of enrolled tribal member status. The Superintendent responded the BIA had no statutory, regulatory, or Tribal authority to intervene on behalf of the individuals seeking enrollment. Nevertheless, the 43 individuals submitted applications for enrollment to the BIA. The BIA Area Director replied, "the Eastern Shoshone Tribe has complete authority over the enrollment procedures and the tribe can enroll anyone meeting their criteria," but agreed to forward the applications to the Superintendent. The Superintendent denied all authority to intervene, stating, "I will again reiterate, we are not the forum to address this issue. I would suggest you contact the Tribal court or the Tribal Council."

The Association then brought this action for declaratory and injunctive relief based on violations of the Indian Civil Rights Act (ICRA), 25 U.S.C. §§ 1301-1303. It sought a declaration the members of the Association are enrolled members of the Tribe and are entitled to all the rights, privileges, and benefits thereof; a mandatory injunction requiring the BIA to proceed with the administrative steps required to enroll the plaintiffs as members of the Tribe without further action by the Business Council; and a mandatory injunction ordering the Business Council to proceed with the administrative procedures

---

[2] Although these 43 individuals presently comprise the Ordinance 59 Association, it does not appear from the record that the individuals had formed the Association, an organization under Wyoming law, by the time of their correspondence with the BIA.

necessary to enroll the members of the Association as full members of the Tribe and to submit their names as enrolled members to the BIA.[3] In addition, the Association alleged other statutory violations. The district court dismissed the action because the Tribe's sovereign immunity precluded the exercise of jurisdiction over the tribal defendants, and there was no claim for which relief may be granted against the federal defendants. The Association appeals, and we affirm.

### The Tribal Defendants

The Supreme Court has held Indian tribes retain sovereign immunity from suit absent either an explicit waiver of immunity or express authorization of the suit by Congress. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978). The Association's First Amended Complaint asserted jurisdiction over the Business Council and its individual members under the ICRA, 25 U.S.C §§ 1301-1303. In *Santa Clara*, however, the Court explained no jurisdictional basis for declaratory or injunctive relief exists within the ICRA. *Id.* at 56-59, 98 S. Ct. at 1676-77.

The Association contends jurisdiction exists in this case not only because it is factually and legally distinguishable from *Santa Clara*, but also because it falls within the

---

[3]Ordinance 59 is silent on how enrollment becomes final, although it provides that appeals on adverse membership actions are heard by the General Council whose decisions are final. The Association has asked the Business Council to register its members with the BIA as members of the Tribe, but case law indicates tribes, not the BIA, have exclusive authority on membership determinations for tribal purposes. *See Martinez v. Southern Ute Tribe*, 249 F.2d 915, 920 (10th Cir. 1957).

*"Dry Creek* exception" to *Santa Clara*. In *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980), we did announce an exception to *Santa Clara* and allowed a suit to proceed against a tribe when the dispute involved a non-Indian, the matter in dispute was not intra tribal, and no tribal forum for the dispute existed. *Id.* at 685. However, the Association's arguments fail because it has not established a *Dry Creek* exception to *Santa Clara*.

*Santa Clara* involved a tribal enrollment ordinance denying membership to children of female members who married outside the tribe, but extending membership to children of male members who married outside the tribe. A female tribal member brought suit in federal court for declaratory and injunctive relief, alleging these membership criteria violated the ICRA, 25 U.S.C. §§ 1301-1303, which provides, "[n]o Indian tribe in exercising powers of self-government shall … deny to any person within its jurisdiction the equal protection of its laws." *Santa Clara*, 436 U.S. at 51, 98 S. Ct. at 1673. The Tribe moved to dismiss on the ground the district court lacked subject matter jurisdiction to decide "intra tribal controversies affecting matters of tribal self-government and sovereignty." *Id.* The district court rejected this argument and found

jurisdiction in 28 U.S.C. § 1343(4)[4] and 25 U.S.C. § 1302(8).[5] The Court of Appeals affirmed the district court's jurisdictional ruling. The Supreme Court reversed and held the sovereign immunity of an Indian tribe protects the tribe and its officials from suit for declaratory or injunctive relief unless Congress expressly indicates its intent to allow such suit. *Santa Clara*, 436 U.S. at 59-72, 98 S. Ct. at 1673, 1677-84.

Revisiting *Santa Clara's* careful analysis of tribal sovereign immunity is helpful in understanding its applicability. Authored by Justice Marshall, the *Santa Clara* opinion traces the Court's acknowledgment of the pre-Constitutional origins and modern formulations of inherent tribal sovereign immunity. *Id.* at 55-57, 98 S. Ct. at 1675-76. The Court first found that "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Id.* at 55, 98 S. Ct. at 1675 (citing *Worcester v. Georgia*, 6 Pet. 515, 559, 8 L. Ed. 483 (1832)). Furthermore, tribes "have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Id.* at 55, 98 S. Ct. at 1675-76. Tribal sovereign immunity is subject only to Congressional authority "to limit, modify or eliminate the powers of local self-

---

[4] "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person … [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(4).

[5] "No Indian tribe in exercising powers of self-government shall ... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law ...." 25 U.S.C. § 1302(8).

government which the tribes otherwise possess." *Id.* at 56, 98 S. Ct. at 1676. In enacting the ICRA, Congress provided just one express remedial provision, a writ of habeas corpus, to "test the legality of [an individual's] detention by order of an Indian tribe." 25 U.S.C. § 1303. The Court found this limited remedial provision could not serve as a general waiver of sovereign immunity, holding, "in the absence here of any unequivocal expression of contrary legislative intent, we conclude that suits against the tribe under the ICRA are barred by its sovereign immunity from suit." *Id.* at 59, 98 S. Ct. at 1677.

Second, the Court held tribal officials were also protected by the tribe's sovereign immunity. *Id.* at 72, 98 S. Ct. at 1684. The Court noted the importance of analyzing section 1302 against the backdrop of tribal sovereignty, stating:

> Even in matters involving commercial and domestic relations, we have recognized that subject[ing] a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves, may undermine the authority of the tribal cour[t] … and hence … infringe on the right of the Indians to govern themselves. A fortiori, resolution in a foreign forum of intra tribal disputes of a more public character, such as the one in this case, cannot help but unsettle a tribal government's ability to maintain authority.

*Id.* at 59, 98 S. Ct. at 1677-78 (internal quotations and citations omitted). Recognizing congressional power to authorize suits against tribal officers, the Court noted, "we tread lightly in the absence of clear indications of legislative intent." *Id.* at 60, 98 S. Ct. at 1678 (citations omitted). Turning to the purposes of the ICRA, the Court found two primary, but competing objectives: strengthening the position of individual tribe members

vis-à-vis the tribe and promoting Indian self-government. *Id.* at 62, 98 S. Ct. at 1679.[6]

To balance the competing objectives, the Court reasoned the civil rights recognized by

section 1302 must be vindicated in a way that does not unduly intrude upon the self-

determination of tribal governments. *Id.* at 64, 98 S. Ct. at 1680.

The Court concluded Congress itself struck the proper balance by providing

habeas corpus relief as the sole means of enforcing section 1302 within a federal forum:

> [C]ontrary to the reasoning of the court below, implication of a federal
> remedy in addition to habeas corpus is not plainly required to give effect to
> Congress' objective of extending constitutional norms to tribal
> self-government. Tribal forums are available to vindicate rights created by
> the ICRA, and § 1302 has the substantial and intended effect of changing
> the law which these forums are obliged to apply. Tribal courts have
> repeatedly been recognized as appropriate forums for the exclusive
> adjudication of disputes affecting important personal and property interests
> of both Indians and non-Indians. Nonjudicial tribal institutions have also
> been recognized as competent law-applying bodies. Under these
> circumstances, we are reluctant to disturb the balance between the dual
> statutory objectives which Congress apparently struck in providing only for
> habeas corpus relief.

*Id.* at 65, 98 S. Ct. at 1680-81 (citations omitted). Interpreting the statute consistent with

congressional intent, the Court held section 1302 does not provide an implied right of

---

[6] Substantive portions of the ICRA indicate Congress' commitment to the goal of tribal self-government. *Id.* at 62-63 (section 1302 imposes on tribal governments only selected civil rights rather than the entire panoply of constitutional limitations imposed on the federal government, and sections 1321-1326 allow the several states to assume jurisdiction over civil or criminal matters arising within Indian Country only if the relevant tribe consents to such jurisdiction).

- 11 -

action against tribal officials for declaratory or injunctive relief based on violations of the ICRA. *Id.* at 72, 98 S. Ct. at 1684.

Like *Santa Clara*, the dispute here involves tribal membership. It also implicates relations among the various branches of Shoshone tribal government. These internal tribal issues are exactly the type for which "resolution … will frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts." *Id.* at 71, 98 S. Ct. at 1683; s*ee also* Gloria Valencia-Weber, *Tribal Courts: Custom and Innovation*, 24 N.M. L. Rev. 225, 250 (1994) ("The use of custom and the associated reasoning reveal the integrative task facing tribal courts. Initially, the tribal courts must determine what is validated custom. The question is whether the indigenous people acknowledge, accept, and conform their conduct in accordance with a stated concept. Additionally, the court may look to state and federal law for culturally appropriate models and guidance."). Further, the Tribe has not waived its sovereign immunity, and the ICRA does not authorize suit of the Tribe or its officials. Under *Santa Clara*, the district court correctly concluded it lacked jurisdiction because the tribal defendants retained sovereign immunity from suit in federal court. If not for our opinion in *Dry Creek*, this would be the end of the matter.

*Dry Creek* involved a non-Indian entity, Dry Creek Lodge, Inc., which owned a 160-acre tract of land located within the Wind River Reservation of the Arapahoe and Shoshone Tribes (Tribes). Dry Creek built the lodge on its property, intending to develop

the site as a commercial attraction. 623 F.2d at 683-84. Prior to development, Dry Creek

obtained the reservation superintendent's approval of the plan. The access road which led

to the lodge, however, passed over land owned by the Bonatsies, an Indian family. The

day after the lodge opened, the Tribes closed the access road at the Bonatsies' request.

Dry Creek asked the tribal court to hear the dispute, but the court declined to take the case

absent the Business Council's consent. Dry Creek then addressed its request for tribal

court access to the Business Council which did not consent. A state court action was

apparently brought and removed to federal court. *Id.* at 684.

There, the Tribes moved to dismiss the claim for want of jurisdiction. The district

court granted the motion, but we reversed and remanded the matter for trial. ***Dry Creek***

***Lodge, Inc. v. United States***, 515 F.2d 926 (10th Cir. 1975). Although the jury ruled

against the Tribes, the district court granted a motion for a new trial on the issue of

damages only. Before the damages portion of the case was retried, however, the Supreme

Court published ***Santa Clara***, and the district court dismissed the action on the theory

***Santa Clara*** had decided the jurisdictional question.

On appeal, we distinguished ***Santa Clara***, noting it involved a purely internal tribal

dispute:

> The issue and control [in ***Santa Clara***] was on the basis of ownership, tribal
> membership, and tribal use of its own lands. The problem was thus strictly
> an internal one between tribal members and the tribal government relating
> to the policy of the Tribe as to its membership. Of course, there were no
> non-Indians concerned.

***Dry Creek****,* 623 F.2d at 685.  We also observed the ***Santa Clara*** Court placed strong emphasis on the existence of a tribal forum for the plaintiff's claim.  ***Id.***  Further, we believed the Supreme Court's decision to limit federal jurisdiction in ***Santa Clara*** was based on the nature of the dispute (a purely internal, tribal matter) and the availability of an alternate remedy (the tribal court system).  Without these two circumstances, we decided the justification for limiting federal jurisdiction no longer existed, and ***Santa Clara*** should not apply.  ***Id.***  We therefore found jurisdiction, notwithstanding ***Santa Clara***, and remanded the case for a new trial on the damages issue.

Thus, for our purposes, ***Dry Creek*** yields a succinct test to qualify for the exception to tribal sovereign immunity.  A plaintiff must demonstrate: the dispute involves a non-Indian party; a tribal forum is not available; and the dispute involves an issue falling outside internal tribal affairs.  ***Dry Creek***, 623 F.2d at 685 ("[I]n the absence of such other relief or remedy the reason for the limitations disappears.  The reason for the limitations and the references to tribal immunity also disappear when the issue relates to a matter outside of internal tribal affairs and when it concerns an issue with a non-Indian.").

We have recognized this understanding of ***Dry Creek*** many times.  *See, e.g., **Nero v. Cherokee Nation of Oklahoma***, 892 F.2d 1457, 1460 (10th Cir. 1989) ("A majority of the panel in ***Dry Creek*** ... concluded that such an exception exists under the ICRA where the dispute does not concern internal tribal issues, the plaintiff is non-Indian, and tribal

remedies are unavailable."); ***Enterprise Management Consultants, Inc. v. Hodel***, 883

F.2d 890, 892 (10th Cir. 1989) ("The majority in ***Dry Creek Lodge*** articulated an

exception to the doctrine of sovereign immunity set out in ***Santa Clara Pueblo***, basing its

decision on three factors:  an alleged violation of the Indian Civil Rights Act, the denial

of a tribal forum, and a conflict involving a matter outside internal tribal affairs …. The

dispositive factors in ***Dry Creek Lodge*** are absent here.  We therefore affirm the dismissal

of the Tribe on the basis of its sovereign immunity from suit."); ***Ute Distribution Corp. v.***

***Ute Indian Tribe***, 149 F.3d 1260, 1266 (10th Cir. 1998) (describing ***Dry Creek*** within a

citation parenthetical as one "creating limited exception to tribal immunity in ICRA cases

when the dispute does not concern internal tribal issues, the plaintiff is a non-Indian, and

tribal remedies are unavailable").  The district courts apply ***Dry Creek*** similarly.  *See,*

*e.g.,* ***Jimi Development Corp. v. Ute Mountain Ute Indian Tribe***, 930 F. Supp. 493, 496

(D. Colo. 1996); ***Sahmaunt v. Horse***, 593 F. Supp. 162, 164 (W. D. Okla. 1984).

Under the ***Dry Creek*** test, the Association has clearly failed to establish

jurisdiction.  The issues in dispute – the validity, application, and enforcement of a tribal

enrollment provision – are clearly  matters of internal tribal concern and are the same

issues which were at stake in ***Santa Clara***.  The fact that the Association is a non-Indian

entity does not bring the dispute outside of internal tribal concern.  *See **Santa Clara***, 436

U.S. at 72, n.32 ("[a] tribe's right to define membership for tribal purposes has long been

recognized as central to its existence …. The judiciary should not rush to create causes of

action that would intrude on these matters."). Further, another tribal forum may be available to the Association, namely the General Council. In *Santa Clara*, the Supreme Court specifically recognized "nonjudicial tribal institutions" as "competent law-applying bodies." 438 U.S. at 66, 98 S. Ct. at 1681. As the Tribe's supreme governmental body, the General Council may be suited to resolve the apparent conflict between the Tribal Court and the Business Council. The potential availability of that forum alone forestalls jurisdiction under *Dry Creek***'s** three-part test.[7]

The Association concedes the current dispute is "undoubtedly" internal but argues it is not the sort of dispute contemplated by *Santa Clara*. In *Santa Clara,* the Court was concerned with imposing federal will on internal tribal disputes. In this case, the Association asserts it merely asks to have a decision of the tribe enforced, and federal involvement in this effort will not impact the kind of self-determination underlying *Santa Clara*. This argument misreads *Santa Clara***, *Dry Creek***, and the nature of the instant dispute. First, *Santa Clara* was not fact-specific. The Court based its holding on broad principles of sovereign immunity, and held, in the absence of express congressional directive or explicit tribal waiver of immunity, no federal jurisdiction lies in an action for declaratory or injunctive relief against a Tribe or its officers. Not only is *Santa Clara* a broad holding, but the facts of this case are strikingly similar to those of *Santa Clara*.

---

[7] The potential availability of the tribal forum would also forestall jurisdiction under the "absolute necessity" factor discussed below.

- 16 -

Like in ***Santa Clara***, it would be impossible for a federal district court to exercise jurisdiction in this case without imposing its will on an internal membership dispute.

Second, ***White v. Pueblo of San Juan***, 728 F.2d 1307, 1312 (10th Cir. 1984), cited by the Association, and many other cases following ***Dry Creek*** have emphasized the ***Dry Creek*** exception is to be interpreted narrowly. We are not free to say ***Dry Creek's*** "no internal dispute" requirement is met by certain internal disputes and not others. Under ***Dry Creek***, if the dispute is an internal one, we cannot exercise federal jurisdiction. Finally, the Association attempts to portray its dispute as "not with a co-equal branch of the Shoshone Tribal Government," but "only with an inferior body, the Business Council, that has acted lawlessly by ignoring the dictates of superior Tribal institutions — the General Council and the Tribal courts." Our response is the Association should challenge the Business Council's authority in a tribal forum such as the General Council, rather than in the federal courts.

No matter how this case is approached, the Association is asking this court to step in and tell a tribal government what to do in a membership dispute. Whether federal intervention would be right, wrong, or well-intentioned, that intervention is exactly the kind of interference in tribal self-determination prohibited by ***Santa Clara***.

Nevertheless, the Association contends ***Dry Creek*** confers jurisdiction on the federal courts under its "absolute necessity" doctrine. The Association emphasizes that it has consistently sought remedies in the tribal trial and appellate courts. Despite the

- 17 -

Association's many victories achieved in the tribal court system, the Business Council

and the BIA have not conferred membership status upon Association members. The

Association argues:

> The Appellants' ultimate failure points up the "absolute necessity" for the
> federal court to act in their case. Despite all of their efforts, they, like the
> plaintiff in *Dry Creek*, were left with a right, but not a remedy. The Tribal
> courts, for whatever reason, were simply unable to compel compliance with
> their rulings. Consequently, the plaintiffs in the Tribal court cases finally
> turned to the federal court for vindication. They had and have no other
> forum to achieve their legitimate goals …. [¶] This Court should … take
> this opportunity to apply *Dry Creek* in the way it was meant to be applied –
> in those few and narrow cases where a person or entity does everything
> possible to follow and rely on Tribal court mechanisms, but is stymied and
> prevented from doing so by other tribal entities or persons.

This unsuccessful procedural history, the Association states, brings its claim within the

*Dry Creek* exception for cases where federal court intervention is an "absolute necessity."

That view of the *Dry Creek* exception reflects another erroneous reading of the

case. The words "absolute necessity" do not appear anywhere in the *Dry Creek* opinion.

Instead, this court coined the phrase in a subsequent opinion where we stated:

> The rationale behind the holding of the Tenth Circuit in *Dry Creek* was
> based upon what the court regarded as absolute necessity. In other words,
> to deny relief meant that the persons who had built the hotel could not gain
> access to it, nor could they attract members of the public. Necessarily the
> *Dry Creek* opinion must be regarded as requiring narrow interpretation in
> order to not come into conflict with the decision of the Supreme Court in
> *Santa Clara*. Accordingly, the *Dry Creek* decision ought to be interpreted
> to provide a narrow exception to the traditional sovereign immunity bar
> from suits against Indian tribes in federal courts. In addition, to adhere to
> the principles of *Santa Clara*, the aggrieved party must have actually sought
> a tribal remedy, not merely have alleged its futility. This is not merely a
> requirement that the exhaustion of tribal remedies is a prerequisite to

federal jurisdiction, but instead, that tribal remedies, if existent, are exclusive. Judged in this light the Pueblo are immune from this suit for damages under the ICRA and the district court's dismissal of the action is to be affirmed.

*White*, 728 F.2d at 1312. This passage makes clear *White* did not set out "absolute necessity" as the test for a *Dry Creek* exception. Rather, the court was concerned with appropriately limiting the already narrow *Dry Creek* rule to circumstances of absolute necessity.

Two subsequent cases picked up on the phrase "absolute necessity" as embodying the reasoning of the *Dry Creek* opinion. *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1170 (10th Cir. 1992) ("As this court explained in [*White*], the *Dry Creek* holding is a 'narrow exception' to sovereign immunity based on a finding of 'absolute necessity.'"); *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma*, 874 F.2d 709, 715 n.6 (10th Cir. 1989) (describing *Dry Creek* in a parenthetical as a case "based on what the court regarded as absolute necessity"). Yet, *Bank of Oklahoma* quickly disposed of the proffered jurisdictional argument on the ground the plaintiff had failed to seek tribal remedies:

> The Bank … urges this court to apply the narrow exception to the exhaustion requirement which this court granted in [*Dry Creek*]. That exception depended, however, on the finding that no tribal court forum existed for the non-Indian party. As explained in our later case, [*White*], "speculative futility is not enough to justify federal jurisdiction." The Bank cannot simply assert that it is not subject to tribal court jurisdiction; rather, it must actually seek adjudication of this issue in tribal court.

- 19 -

***Bank of Oklahoma***, 972 F.2d at 1170. ***Seneca-Cayuga*** gave ***Dry Creek*** even less

attention. 874 F.2d at 715 n.6 (discussing ***Dry Creek*** in a footnote to the proposition that

no federal or state government has jurisdiction absent tribal consent).

In short, the "absolute necessity" doctrine, as the Association calls it, exists only in

its own creative advocacy. Our courts have not fully defined, discussed, or relied on the

concept in disposing of the cases before them. ***White*** and ***Bank of Oklahoma*** stand for

the proposition that a plaintiff who has access to a tribal forum is required to use that

forum. ***Seneca-Cayuga*** does not rely on ***Dry Creek*** at all. This trio of cases cannot serve

as a definitive exegesis of ***Dry Creek*'s** requirements. These cases cannot be read to

substitute an "absolute necessity" doctrine for the test we announced in ***Dry Creek***.

The Association has failed to establish facts bringing its case within the ***Dry Creek***

exception. Further, we emphasize the minimal precedential value of ***Dry Creek***. With the

exception of ***Dry Creek*** itself, we have *never* found federal jurisdiction based on the ***Dry***

***Creek*** exception. *See **Bank of Oklahoma***, 972 F.2d at 1170 (exception not applicable

because plaintiff failed to seek tribal remedy); ***Olguin v. Lucero***, 87 F.3d 401, 404 (10th

Cir. 1996) (exception not applicable because plaintiff had an action pending before tribal

court); ***Nero***, 892 F.2d at 1460 (exception not applicable because plaintiff failed to pursue

available tribal remedies and the dispute concerned internal tribal affairs of membership

and government); ***White***, 728 F.2d at 1309 (exception not applicable because tribal

remedies were available to the plaintiff); ***Enterprise Management Consultants, Inc.***, 883

F.2d at 892 (exception inapplicable because none of the three factors were present); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1346 (10th Cir. 1982) (exception inapplicable because claims did not involve "particularly egregious allegations of personal restraint and deprivation of personal rights"); *Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 319 n.4 (10th Cir. 1982) (same). We conclude the tribal defendants retained sovereign immunity from suit and the Association did not establish a *Dry Creek* exception to *Santa Clara*. The district court properly dismissed the claims against the tribal defendants.

### The Federal Defendants

The Association contends the federal defendants are required to take the "ministerial" step of recognizing Association members as Eastern Shoshone tribal members. The Association claims jurisdiction and a cause of action against the Secretary and the BIA may be found in 25 U.S.C. § 163. That section provides:

> The Secretary of the Interior is authorized, wherever in his discretion such action would be for the best interest of the Indians, to cause a final roll to be made of the membership of any Indian tribe; such rolls shall contain the ages and quantum of Indian blood, and when approved by the said Secretary are declared to constitute the legal membership of the respective tribes for the purpose of segregating the tribal funds as provided in section 162 of this title, and shall be conclusive both as to ages and quantum of Indian blood.

25 U.S.C. § 163. The Association's argument fails on several levels.

First, section 163 is inapplicable to this case. According to the Solicitor of the Department of the Interior, section 163 has limited applicability: "the tribal rolls made

under section 163 are … required to be used only for the completion of the distribution of such funds as have been segregated under section 162 and remain undistributed." Solicitor's Opinion, May 17, 1941, 1 Op. Sol. on Indian Affairs 1049, 1051 (U.S.D.I. 1979). This case does not involve the distribution of funds segregated under section 162. Therefore section 163 does not apply.[8]

Second, section 163, standing alone, does not establish subject matter jurisdiction. As the federal defendants have argued, the purported violation of 25 U.S.C. § 163 must be coupled with either 28 U.S.C. § 1331, federal question, or 28 U.S.C. § 1361, mandamus jurisdiction. The Association did not plead section 1361, and this court's precedent would render such a position untenable. *See **Prairie Band of Pottawatomie Tribe of Indians v. Udall***, 355 F.2d 364, 367 (10th Cir. 1966) (action of the Secretary under section 163 is discretionary and cannot be compelled by mandamus). Section 1331 fails to confer jurisdiction because no federal question exists in this case. This dispute does not involve the preparation of a final roll, and section 163 does not impose upon the Secretary a duty to act on membership applications. *See **id.*** (section 163 does not impose a specific duty upon the Secretary to persons wishing to be enrolled in an Indian tribe).

---

[8] Enacted in 1919, 25 U.S.C. § 162 was a "sweeping effort … to dissolve Indian tribes and tribal property." *Felix S. Cohen's Handbook of Federal Indian Law* 139 (Rennard Strickland et al. eds., 1982). In 1938, section 162 was repealed and replaced by section 162a which reflected new congressional policy disfavoring the eradication of tribes. Solicitor's Opinion, May 17, 1941, 1 Op. Sol. on Indian Affairs 1049, 1052 (U.S.D.I. 1979). Congress has not amended section 163 to reference 162a which covers the deposit and investment of tribal funds. *See* 25 U.S.C. §§ 162, 162a, 163.

Even if section 163 provided a private cause of action, Secretarial decisions or actions do not create a federal question when no final roll is at issue. *Martinez v. Southern Ute Tribe*, 249 F.2d 915, 920-21 (10th Cir. 1957).

Finally, the Association has not stated a claim upon which relief may be granted. A federal court order compelling the Secretary to comply with the requests of the Association would not have the effect of enrolling Association members in the tribe because tribes, not the federal government, retain authority to determine tribal membership. *See id.* at 920. ("The courts have consistently recognized that in absence of express legislation by Congress to the contrary, a tribe has the complete authority to determine all questions of its own membership, as a political entity … [and] § 163 and its predecessors qualify that power [only] where the question involved is the distribution of tribal funds and other property under the supervision and control of the federal government."). The Association contends the Tribe, by Tribal Court order, has conferred membership on Association members and Secretarial recognition of enrollment would constitute only a "ministerial" step. This argument fails because in Ordinance 59 and other tribal laws, the General Council expressly retains jurisdiction over enrollment decisions. We hold the district court correctly dismissed the claims against the federal defendants.

The ICRA does not provide for injunctive or declaratory relief against the Tribe or its officers. Under *Santa Clara*, the tribal defendants retain sovereign immunity, and *Dry*

*Creek* does not hold otherwise. Further, the Association did not demonstrate jurisdiction or state a claim for which relief may be granted against the federal defendants. For these reasons, we **AFFIRM** the district court order dismissing the Association's claims.