**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 6/11/96**

**TENTH CIRCUIT**

_____

MONA OLGUIN; PHYLLIS MORA,               )
                                         )
       Plaintiffs-Appellants,            )
                                         )
v.                                       )       No. 95-2191
                                         )
ALVINO LUCERO, Governor of Pueblo of Isleta, in his )
individual capacity; JUAN B. ABEITA, FERNANDO )
ABEITA, ROSEMARY ABEITA, JOSEPHINE FISHER, )
EDDIE JOJOLA, LORENZO JOJOLA, RAYMOND )
JOJOLA, MICHAEL A. LENTE, LARRY LUCERO, )
ANDY PADILLA, EDDIE PAUL TORRES, Sr., ALLAN )
ZUNI, Current and former members of the Isleta Tribal )
Counsel, in their individual capacities, )
                                         )
       Defendants-Appellees.             )

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-95-286-LH)**

_____

Jacquelyn Robins, New Mexico Civil Liberties Foundation, Albuquerque, New Mexico, for Plaintiffs-Appellants.

L. Lamar Parrish of Ussery & Parrish, P.A., Albuquerque, New Mexico, for Defendants-Appellees.

_____

Before **BRORBY, BARRETT** and **LIVELY**,[*] Circuit Judges.

_____

**BRORBY**, Circuit Judge.

Plaintiffs Mona Olguin and Phyllis Mora appeal the district court's ruling that it lacked

_____

[*] The Honorable Pierce Lively, United States Circuit Judge for the Sixth Circuit, sitting by designation.

subject matter jurisdiction over their claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

Ms. Olguin and her daughter Ms. Mora are members of the Isleta Tribe residing on tribal lands. Appellees are former and current members of the Isleta Tribal Council. On March 16, 1995, appellants filed a complaint alleging the appellees had violated their free speech rights as guaranteed under the Pueblo of Isleta Constitution and the First Amendment to the United States Constitution, their contractual rights, their right to judicial process, and their right to full and equal benefit of all laws under 42 U.S.C. § 1981.

Appellants claim these violations occurred after Ms. Mora's husband, Mark Mora, was evicted from the reservation by order of the Tribal Council. On the day of his eviction, appellants went to the tribal Governor's office to ascertain the reason for Mr. Mora's eviction. At the Governor's office, appellants spoke to Tribal Council Secretary Josephine Fisher. Later that day, appellants were served with a temporary restraining order that was issued on Ms. Fisher's request based on the verbal exchange at the Governor's office. Several days later, Ms. Olguin was suspended without pay from her employment with the Tribal Police for fifteen days, with ninety days probation "for insubordination to a Tribal Council Member." Ms. Olguin's appeals of the suspension were denied by tribal authorities. Approximately eight months later, tribal officers attempted to tow away motor vehicles registered in Mr. Mora's name from Ms. Mora's home. Appellants allege that when Ms. Mora "tried to find out why the vehicles were being taken, the Tribal Police arrested [Ms.] Mora

2

for offenses including interference with police and refusal to obey." Appellants then filed claims in tribal court on which they allege no actions were taken until after they filed their complaint in federal court several months later.

In a ruling from the bench, the district court dismissed appellants' claims after finding lack of subject matter jurisdiction. The district court stated:

> With respect to the jurisdiction of this Court, I will make these observations: absent an act of Congress, the plaintiffs in this case cannot base subject matter jurisdiction on violation of the federal constitutional rights, which include the right to freedom of speech. Although the plaintiffs ought to be entitled to redress for a violation of their rights of freedom of speech, and they've obviously pled retaliatory acts taken against them for attempting to exercise those rights, the question is whether or not I have jurisdiction to do that.
>
> The two statutory bases for such jurisdiction are the Indian Civil Rights Act, 25 U.S.C. Section 1302, and 42 U.S.C. Section 1981. As I observed during my discussion with counsel, I'm certainly in sympathy with the position of the plaintiffs, yet I have to find statutory bases upon which to exercise my sympathy, if that's what it -- as it were, let's say.
>
> And the *Santa Clara* case ... is important. In that case, the Supreme Court said that Section 1302 does not impliedly authorize actions for declaratory or injunctive relief against a territory, tribe, or its officers. If those are not authorized, neither would an action for damages, as is also prayed for in this case. The Indian Civil Rights Act, according to that case -- and it may be on the way out, but my job is not to make new law, but apply the law as the superior courts have described it to me -- and, therefore, I must conclude that the Indian Civil Rights Act authorizes only habeas corpus actions, and I do not have jurisdiction over these matters under that act.
>
> The next one is Section 1981, 42 U.S.C. 1981. The question here is whether 42 U.S.C. 1981 is applicable to this case, based on the allegations of the complaint. And try as I may, and I've tried, I do not find a claim of racial discrimination, either explicit or implicit, in the allegations of the complaint. Therefore, I conclude that I do not have jurisdiction over this action under 42 U.S.C. Section 1981. And, certainly, I do not have jurisdiction under the Isleta Pueblo constitution.

3

The district court also stated that even if it had jurisdiction it would have abstained from hearing their claims until it determined whether the tribal court had jurisdiction.

Appellants raise three issues on appeal: 1) whether the district court erred in finding it lacked jurisdiction under 25 U.S.C. § 1301 *et seq.*; 2) whether the district court erred in finding it lacked jurisdiction under 42 U.S.C. § 1981; and 3) whether the district court erred in deferring to the jurisdiction of the Pueblo of Isleta Tribal Courts. Appellees claim in their response brief that the doctrine of sovereign immunity should be applied to bar appellants' cause of action. We do not address the issue of sovereign immunity or appellants' third issue because we hold the district court correctly ruled it did not have subject matter jurisdiction over appellants' claims.[1]

II

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction. *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 944 (10th Cir. 1995); *Quintana v. United States*, 997 F.2d 711, 712 (10th Cir. 1993). Under *de novo* review we conduct an independent determination of the issues using the same standard employed by the district court. *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967); *United States v. Frederick*, 897 F.2d 490, 491 (10th Cir.), *cert. denied*, 498 U.S. 863 (1990).

---

[1] Appellees' motion to strike portions of appellants' appendix is denied as moot because our disposition of this appeal did not require us to consider the disputed portions.

A.

We first address whether the district court had jurisdiction over appellants' claims under the Indian Civil Rights Act, 25 U.S.C. § 1301 *et. seq.* In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55-56 (1978), the Supreme Court recognized the independent sovereignty of Indian tribes and stated "[t]hey have power to make their own substantive law in internal matters [citations omitted] and to enforce that law in their own forums." The Court then closely analyzed the lelgislative history of the Indian Civil Rights Act before holding the Act provides for federal review only in habeas corpus proceedings. *Id.* at 70. We carved out a narrow exception to this holding in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980), *cert. denied*, 449 U.S. 1118 (1981). In *Dry Creek* the plaintiffs had sought and been refused a remedy in tribal court and we thus held "in the absence of such other relief or remedy the reason for the [*Santa Clara*] limitations disappears." *Id.* at 685. We explained the reason for the exception as follows:

> It is obvious that the plaintiffs in this appeal have no remedy within the tribal machinery nor with the tribal officials in whose election they cannot participate. The record demonstrates that plaintiffs sought a forum within the Tribes, to consider the issue. They sought a state remedy and sought a remedy in the federal courts. The limitations and restrictions in *Santa Clara* should not be applied. There has to be a forum where the dispute can be settled.

*Id*. In *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 (10th Cir. 1984), we noted the necessity of construing the *Dry Creek* exception narrowly to prevent a conflict with *Santa Clara* before holding "[t]he tribal remedy must be shown to be nonexistent by an actual attempt before a federal court will have jurisdiction." *Id.* at 1313.

Appellants do not allege this case involves a habeas corpus proceeding as required under

5

*Santa Clara*. Instead they attempt to factually distinguish their case from *Santa Clara*. This attempt is misguided. The ruling in *Santa Clara* was not fact specific, but rather, a detailed look at the legislative history of the statute culminating in the judicial interpretation that the Indian Civil Rights Act provides a federal remedy solely in habeas corpus proceedings. Appellants also try to argue they fall within *Dry Creek Lodge*'s narrow exception. Appellants admit they have filed an action in tribal court similar to the current action but claim "[d]ue to the lack of any action on [Appellants'] tribal court complaints until and unless the federal Complaint was filed, it is apparent that there was no 'internal relief available' to [Appellants] in the instant case and, therefore, they were in the same position as the Plaintiffs in *Dry Creek Lodge*." The crucial distinction is the plaintiffs in *Dry Creek Lodge* were prevented from even filing a cause of action in tribal court and were instead directed to use "self help," while the appellants currently have a cause of action pending before the tribal court. In fact, during oral argument appellants' counsel acknowledged appellants are scheduled to have a pre-trial hearing next month on their claims in tribal court. To argue they have been denied access to the tribal court while they are preparing for a pre-trial conference in tribal court is disingenuous. What we have here is a non-habeas corpus dispute existing solely between tribal members, which occurred on tribal land and is set to be heard in tribal court. Under these circumstances it is clear the federal court lacked jurisdiction to hear the claims under the Indian Civil Rights Act.

III

We now turn to whether the district court had jurisdiction to hear appellants' claims under 42 U.S.C. § 1981(a), which provides:

> All persons within the jurisdiction of the United States shall have the same

right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The purpose of § 1981 is to prevent discrimination against an individual on the basis of his or her race or ethnic background. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Based on the history of § 1981 we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."). In their complaint, appellants alleged the appellees "engaged in conduct which injured [Appellants] and deprived them of their contract rights, judicial process rights and full and equal benefit of all laws as guaranteed by 42 U.S.C. § 1981." This allegation does little more than paraphrase the statute. Nowhere in the complaint do appellants ever once mention, implicitly or explicitly, that they were discriminated against because of their race or ethnic background. On appeal, appellants contend "the Complaint alleged racial discrimination in that the actions taken by [Appellees] were taken as tribal officials against tribal members and would not have been taken against 'white citizens,' contrary to 42 U.S.C. 1981." Appellants support this position in their brief by claiming they argued before the district court that "if Plaintiff Olguin was employed because she was an Indian, then the suspension was also because she was an Indian who had offended a tribal council member and, thus, constituted discrimination on the basis of race." This argument lacks merit. Suffice it to say that a situation where an Indian is suspended by an Indian from a position which one must be an Indian to hold does not evidence a case where an individual suffered disparate or prejudicial treatment based on their race.

For the first time on appeal, appellants argue that a deposition of one of the appellees taken in a different case provides a separate basis for finding race discrimination. Appellants maintain Mr. Mora was evicted because "he was a non-Indian. It therefore follows that the temporary restraining order for which [appellants] received as a result of questioning [Appellee] Fisher about the reason for the eviction was also based on race; to-wit, discrimination against tribal members who associated with non-members and argued on behalf of non-members." Appellants, however, are quick to note they are not questioning the authority of the tribe to evict a non-member. Generally this court will not consider an issue on appeal that was not raised before the district court. *In re Walker*, 959 F.2d 894, 896 (10th Cir. 1992). Because this issue is tied to jurisdiction, however, we will note that beyond the above referenced conclusory statement, appellants fail to provide any evidence that they were discriminated against because of their association with a non-tribal member. Furthermore, the sole evidence they cite for the proposition that Mr. Mora was evicted because of his non-tribal member status fails to support that position and instead provides evidence that Mr. Mora was evicted because the council had received complaints that he was a "troublemaker" and a "non-member" whom they had the right to evict. Even if they provided conclusive evidence that Mr. Mora was evicted for being a "non-member," they concede the Tribal Counsel has the discretion to evict non-members pursuant to Article V, Section 2(e) of the Tribal Constitution and they fail to link any discrimination Mr. Mora may have suffered due to his race with the actions taken against them. In addition, in their complaint, appellants cite a letter from Police Chief Juan Chavez in which he states the complained of actions were taken against Ms. Olguin because her "display in the Governors office was disruptive and degrading and was done in open public." Not once do appellants show any evidence of intentional racial discrimination. *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d

8

1257, 1262 (10th Cir. 1995) (holding that liability under § 1981 requires proof of intentional discrimination).

Appellants also cite our decision in *Tilton v. Richardson*, 6 F.3d 683 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 925 (1994), to support their claim the district court erred in finding it lacked subject matter jurisdiction. In particular appellants rely on the following passage:

> In this instance, the question of whether the court had subject matter jurisdiction was intertwined with the merits of the case, and therefore the district court should have ruled on the merits rather than dismiss for lack of jurisdiction. The exception to this rule is that subject matter jurisdiction does not exist if: (1) the alleged claim was clearly immaterial and asserted solely for the purpose of obtaining jurisdiction, or (2) the alleged claim was insubstantial and wholly frivolous. [Citations omitted.] The record reflects the district court viewed the question of whether a cause of action under § 1985(3) had been stated as "not easily resolved" and "a very close issue"; accordingly, the court did not view the claim as immaterial or frivolous, and the district court improperly found it lacked subject matter jurisdiction.

*Id.* at 685. Appellants claim "[t]he comments of the District Court in the instant case are very similar to the district court in *Tilton*. Therefore, the District Court cannot be said to have found the allegations insubstantial or wholly frivolous." On the contrary, the district court in this case stated: "The question here is whether 42 U.S.C. 1981 is applicable to this case, based on the allegations of the complaint. And try as I may, and I've tried, I do not find a claim of racial discrimination, either explicit or implicit, in the allegations of the complaint." Rather than this statement exhibiting a situation where the district court was struggling with a close call, it appears to be one where the district judge, after a detailed search, was unable to find any basis or merit for the appellants' claims of racial discrimination. After reviewing the complaint and the appellants' arguments on appeal we agree with the district court and find this to be a case which fits the above exception. Appellants

9

have wholly failed to give any indication that the actions of which they complain were racially motivated. Instead it appears their claims are merely a thinly veiled attempt to cry racial discrimination in hopes of obtaining federal jurisdiction over their intertribal dispute. As such we find the district court did not abuse its discretion in finding it lacked subject matter jurisdiction to hear their claims under § 1981.

For the reasons stated above the district court's order is **AFFIRMED**.