**F I L E D**

**UNITED STATES COURT OF APPEALS**

**NOV 28 2003**

**TENTH CIRCUIT**

PHILLIP GALLEGOS,

        Plaintiff - Appellant,

    v.

JICARILLA APACHE NATION, a
federally recognized Indian tribe;
CLAUDIA VIGIL-MUNOZ,
STANFORD SALAZAR, TROY
VICENTI, TYRON VICENTI,
HERBERT MUNIZ, CARSON
VICENTI, LESTER ANDRES, and
RONALD JULIAN, as Tribal Council
members and individually; HOYT
VELARDE, DOREEN VIGIL,
LEESON VELARDE, ISAAC
ROYSTON, TIMOTHY ANDERSON,
ESTEBAN BLANCO, LILLIAN
VENENO, and TINA GOMEZ, as
Tribal employees and individually,

        Defendants - Appellees.

No. 02-2347
(D. Ct. No. CIV 02-1095 WPJ/DJS)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **HENRY**, Circuit
Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-Appellant Phillip Gallegos brought a three-count Complaint alleging violations of the Indian Civil Rights Act, 25 U.S.C. § 1301 *et seq*., and 42 U.S.C. §§ 1985-1986, after he was terminated from employment as a Jicarilla Apache Nation police officer. The district court granted Defendants-Appellees' motion to dismiss. We AFFIRM and GRANT, in part, Defendants-Appellees' motion for sanctions under Fed. R. App. P. 38.

## I. Background

The facts, as stated in the complaint, are as follows. Mr. Gallegos, who is not a member of the Jicarilla Apache Nation ("the Nation"), worked for the Nation as a police patrol sergeant. He alleges that he uncovered evidence of possible criminal activity within the Nation's Police Department, which he reported to federal authorities. The complaint alleges that the Nation itself acquiesced in this illegal conduct. The Nation terminated Mr. Gallegos from his position as a police officer after learning of this report.

Mr. Gallegos, through counsel, administratively appealed his termination of employment to the appropriate tribal authority. After several delays, Mr.

Gallegos's grievance hearing was held, in conjunction with that of a fellow "whistleblowing" member of the Nation's Police Department, who was a member of the Nation. Though the grievance panel found that the Jicarilla Apache police officer was wrongfully terminated, the panel ruled against Mr. Gallegos, after severely limiting his ability to present evidence.

Mr. Gallegos filed a three-count complaint in federal court seeking declaratory and monetary relief. In Count I, he alleges that all Defendants-Appellees, except the Nation, ("the Individual Defendants") violated 42 U.S.C. §§ 1985-1986. In Count II, he claims that all the Defendants-Appellees breached the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1301 *et seq*. In Count III, he asserts that members of the Nation's Legislative Council violated the ICRA.

The district court, in a well-reasoned and thorough opinion, dismissed all three counts. The district court dismissed Counts I (as to the 42 U.S.C. § 1985(3) claim), II, and III for lack of subject matter jurisdiction. It dismissed Count I (as to the 42 U.S.C. §§ 1985(1), 1985(2), and 1986 claims) for failure to state a claim upon which relief may be granted.

Mr. Gallegos timely appealed. Prior to our decision on the merits, the Nation, in conjunction with the Individual Defendants, moved for sanctions against Mr. Gallegos's attorney for filing a frivolous appeal. We take jurisdiction under 28 U.S.C. § 1291, AFFIRM the district court's dismissal of all three counts,

and GRANT, in part, the motion for sanctions.

## II. Discussion

A.      Standard of Review

"Rule 12(b)(1) motions generally take one of two forms." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests. *Id.* We review de novo the district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and review findings of jurisdictional facts, if any, for clear error. *Id.*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotations omitted). We accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* Because legal sufficiency is a question of law, we review the district court's disposition of a Rule 12(b)(6) motion de novo. *Id.*

B.      Indian Civil Rights Act

We affirm the dismissal of the ICRA claims in Counts II and III for lack of subject matter jurisdiction.  Mr. Gallegos contends that the ICRA waives tribal immunity, allowing him to bring his monetary and declaratory judgment claims. We disagree.

We start with a fundamental principle of Indian law:  Indian tribes, as an aspect of their retained sovereignty, possess immunity from suit.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1978).  "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.*, 523 U.S. 751, 754 (1998).  "Congressional waivers of tribal sovereign immunity, however, cannot be implied but must be unequivocally expressed." *Osage Tribal Council ex rel. Osage Tribe of Indians v. United States Dept. of Labor*, 187 F.3d 1174, 1181 (10th Cir. 1999) (internal quotations omitted).

Congress has waived tribal immunity under the ICRA solely for habeas corpus relief.  *Santa Clara Pueblo*, 436 U.S. at 60-61; *Ordinance 59 Ass'n v. United States Dept. of Interior Sec'y*, 163 F.3d 1150, 1154 (10th Cir. 1998). Federal courts, therefore, lack subject matter jurisdiction to hear claims under the ICRA against Indian tribes for declaratory relief, *Ordinance 59 Ass'n*, 163 F.3d at 1153, or monetary damages, *Olguin v. Lucero*, 87 F.3d 401, 404 (10th Cir. 1996).

Further, in addition to the tribes themselves, this immunity from suit under the ICRA protects tribal officers acting in their official capacity. *Santa Clara Pueblo*, 436 U.S. at 71-72; *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997) ("Tribal Defendants [are] entitled to sovereign immunity as far as the official capacity claims").[1]

Mr. Gallegos urges that this weight of authority does not apply to him because he falls within the limited exception announced in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682, 685 (10th Cir. 1980). We find this position without merit. Under *Dry Creek*, a plaintiff may bring a suit for damages against a tribe or tribal official under limited circumstances as an exception to *Santa Clara Pueblo*. *Id.* "*Dry Creek* yields a succinct test to qualify for the exception to tribal sovereign immunity. A plaintiff must demonstrate: the dispute involves a non-Indian party; a tribal forum is not available; and the dispute involves an issue falling outside internal tribal affairs." *Ordinance 59 Ass'n*, 163 F.3d at 1156.

Mr. Gallegos does not satisfy this three part test. First, Mr. Gallegos had

---

[1]The ICRA, by its plain language, does not allow suits against individual Indians acting in a non-official capacity. *See* 25 U.S.C. § 1302 ("No *Indian tribe* in exercising powers of self-government shall . . . .") (emphasis added); *see also Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 935 (10th Cir. 1975) ("Section 1302 speaks only to tribe action, and it has been held that it does not give rise to jurisdiction under 28 U.S.C. § 1343 over individual tribal members.").

access to a tribal administrative body, and he availed himself of that forum. *See Olguin*, 87 F.3d at 404 (holding that plaintiff who brought ICRA claims against the tribe and tribal officers after a suspension of employment from the tribal police force did not fall within *Dry Creek* exception because plaintiff availed herself of a tribal forum).[2] Second, wrongful termination of tribal employment claims, such as that of Mr. Gallegos, are internal tribal affairs. *See Penobscot Nation v. Fellencer*, 164 F.3d 706, 713 (1st Cir. 1999), *cert. denied*, 527 U.S. 1022 (1999) ("[W]e hold that the decision of the [Penobscot] Nation to terminate the employment of a [non-Indian] community health nurse was an 'internal tribal matter' within the meaning of the Settlement Act [25 U.S.C. § 1721 et seq.]."). The conclusion that tribal employment matters are internal to the tribe is bolstered when the employing tribal agency "functions as an arm of the tribal government . . . . not simply [as] a business entity that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially related to self-governance." *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1080 (9th Cir. 2001). Here,

---

[2]The fact that plaintiff in *Olguin* took advantage of a tribal judicial forum and that Mr. Gallegos brought his grievance in a tribal administrative forum is of no consequence. *Cf. Ute Distrib. Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1266 n.8 (10th Cir. 1998) (holding that, under *Santa Clara Pueblo*, access to a tribal forum does not require access to a tribal judicial forum); *Wheeler v. United States Dept. of Interior, Bureau of Indian Affairs*, 811 F.2d 549, 553 (10th Cir. 1987) (holding that a tribal administrative forum constitutes a "tribal forum . . . for resolving a tribal election dispute").

Mr. Gallegos was employed as a tribal police officer, a position central to tribal self-governance.

Finally, Mr. Gallegos argues, without authority, that the Nation waived its sovereign immunity by including the relevant ICRA anti-discrimination language in its Constitution. We rejected this exact argument over a decade ago in *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1460 (10th Cir. 1989) (including ICRA anti-discrimination language in the Cherokee Nation's Constitution "no more constitutes an unequivocal expression of waiver than does the language of the ICRA, which . . . the Supreme Court refused to interpret as a waiver"). For all of these reasons, we affirm the dismissal of the ICRA claims in Counts II and III for want of subject matter jurisdiction.

C.    42 U.S.C. § 1985 and § 1986 Claims

We also affirm the dismissal of the 42 U.S.C. §§ 1985-1986 claims contained in Count I. The district court dismissed these claims against the Nation on immunity grounds. We concur with this result for substantially the same reasons presented above. *See* 42 U.S.C. §§ 1985-1986 (containing no express Congressional waiver of tribal immunity). Similarly, the Individual Defendants acting in their official capacities are immune from suit under §§ 1985-1986. *See Fletcher*, 116 F.3d at 1324. A plaintiff, however, may bring §§ 1985 and 1986 claims against individual Indian defendants acting in their non-official capacity.

*Id*. at 1324 n.12.  Nevertheless, Mr. Gallegos's claims against the Individual Defendants in their non-official capacity fail to state a claim upon which relief may be granted.

1.      42 U.S.C. § 1985(1) Individual Capacity Claim

The district court properly dismissed Mr. Gallegos's § 1985(1) claim.  Mr. Gallegos argues that his termination constitutes interference with the discharging of a federal officer's duties.  We disagree.

Section 1985(1) makes unlawful actions of two or more persons that prevent officers of the United States from discharging their duties.  *See* 42 U.S.C. § 1985(1) ("If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof . . . .").  As the clear language of the statute provides, § 1985(1) only applies when *federal* officers are prevented from discharging their duty.  *See Kush v. Rutledge*, 460 U.S. 719, 724-25 (1983).

Mr. Gallegos's job as a tribal police officer did not make him a federal officer.  Absent cross-deputization or a similar agreement,[3] tribal police are not

---

[3] Mr. Gallegos does not allege that he was cross-deputized or in some other fashion acting as a federal officer.  *Cf. United States v. Schrader*, 10 F.3d 1345, 1350 (8th Cir. 1993) (tribal officers can act as federal officers pursuant to authorized contracts with the Department of Interior).

federal officers unless there is a "working arrangement" in which the federal officers use the tribal officers as a means of skirting a criminal defendant's procedural protections. *See United States v. Leeds*, 505 F.2d 161, 163 (10th Cir. 1974) (holding that tribal officer acted as a federal officer when Bureau of Indian Affairs officer had tribal officers make arrests to avoid a defendant's Fed. R. Crim. P. 5(a) right to go before a magistrate); *see also United States v. Duncan*, 857 F. Supp. 852, 860 (D. Utah 1994) ("Tribal police are not federal officers unless there is a working arrangement with federal officers."). Mr. Gallegos makes no such allegation. Rather, he suggests, without supporting authority, that because tribal officers enforce federal law, this transforms them into federal officers. This argument is meritless. *Cf. United States v. Male Juvenile*, 280 F.3d 1008, 1020 (9th Cir. 2002) (holding that *United States v. Wheeler*, 435 U.S. 313 (1978), requires that a tribe's power to prosecute federal criminal law derives from the tribes inherent sovereignty — not as an aspect of federal agency).

### 2.  42 U.S.C. § 1985(2) Individual Capacity Claim

In addition, the district court properly dismissed the § 1985(2) claim. Mr. Gallegos contends that the Nation fired him after his whistleblowing activities to deter him from testifying as a witness in violation of this statute. He is in error.

Section 1985(2) prohibits a conspiracy to "deter . . . a party or witness in any court of the United States from *attending such court, or from testifying to any*

*matter pending therein . . .*" 42 U.S.C. § 1985(2) (emphasis added). Although Mr. Gallegos spoke with federal officials regarding the criminal activities within the Nation's police department, there simply was no court proceeding at the time of his termination from which the Nation could deter Mr. Gallegos's participation. Thus, the Nation did not violate 42 U.S.C. § 1985(2).

### 3. 42 U.S.C. § 1985(3) Individual Capacity Claim

We also affirm the district court's dismissal of the § 1985(3) claim. Mr. Gallegos contends that his termination and the attendant administrative hearing violated his constitutional equal protection and due process rights, giving rise to a § 1985(3) claim. This argument is without merit.

Section 1985(3) does not create an independent cause of action. Instead, a plaintiff must "point to independent substantive rights enforceable in the federal courts" to serve as a predicate violation. *Wheeler v. Swimmer*, 858 F.2d 259, 261 (10th Cir. 1987). The alleged due process and equal protection violations cannot serve as predicate violations for a § 1985(3) claim because those provisions of the United States Constitution do not constrain tribes and their officials. *Santa Clara Pueblo*, 436 U.S. at 56-57 & n.7.

Thus, the ICRA claim provides the only remaining independent violation alleged by Mr. Gallegos that could serve as a predicate for a § 1985(3) claim. We rejected this use of an ICRA claim in *Fletcher*:

- 11 -

Plaintiffs brought their claims against Defendants Charles Tillman and Geoffrey Standing Bear in their individual capacities as well. Tribal sovereign immunity does not protect an official against individual-capacity claims. However, § 1302(8) of the Indian Civil Rights Act speaks only to tribal action . . . . [Moreover], the Tribe is unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority. The second amended complaint does not invoke any other civil rights statutes by name. . . . other than § 1302(8). [Thus, Plaintiffs cannot bring a § 1985(3) claim against these Defendants in their individual capacity, as they lack a predicate violation.] *Fletcher*, 116 F.3d at 1324 n.12 (internal quotations omitted) (citations omitted).

The reasoning of *Fletcher* applies here. Because Mr. Gallegos presents no viable predicate claim for his § 1985(3) claim, the district court properly dismissed it.

### 4. 42 U.S.C. § 1986 Individual Capacity Claim

The district court properly dismissed Mr. Gallegos's § 1986 claim. "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). Because Mr. Gallegos fails to bring a viable § 1985 theory, the § 1986 claim fails as well. *Id*.

### D. Sanctions

The Nation moved this Court, by separate motion, for an award of attorney's fees and double costs, arguing that this appeal is frivolous pursuant to Fed. R. App. P. 38 ("Rule 38") and 28 U.S.C. § 1927. The Nation seeks this

- 12 -

award of attorney's fees and double costs only from Appellant's attorney Dennis G. Chappabitty — not from Mr. Gallegos himself. In Mr. Chappabitty's response to the sanctions motion, he presents only one argument. He contends that the motion, as it was filed before our decision on the merits, is premature. We disagree with Mr. Chappabitty's timeliness argument, find that this appeal is frivolous pursuant to Rule 38, and hold that "just damages" in this case amount to $5,000.00 and double costs.[4]

"To deter frivolous and abusive litigation and promote justice and judicial efficiency, the federal courts are empowered to impose monetary sanctions, by statutes and the rules of civil and appellate procedure as well as their inherent right to manage their own proceedings." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. R. 38.

"An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Id.* at 1510 (internal quotations omitted). "Rule 38 . . . permits sanctions against attorneys for taking a truly

---

[4]Because we find that Rule 38 provides appropriate damages to the Nation, we do not consider sanctions pursuant to 28 U.S.C. § 1927.

frivolous appeal[,]" *id.* at 1511, regardless of the presence of subjective bad faith on the part of counsel, *id.* at 1512 ("We believe the proper standard under . . . Rule 38 . . . is that . . . [sanctions] are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.").

An appeal may be frivolous as filed or as argued. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578-79 (Fed. Cir. 1991). A party may argue an appeal frivolously, for example, by "submitting rambling briefs that make no attempt to address the elements requisite to obtaining reversal, . . . failing to explain how the lower tribunal erred or to present clear or cogent arguments for overturning the decision below, . . . citation of inapplicable or irrelevant authorities, [or] misrepresenting facts or law to the court[.]" *Id.* at 1579 (internal citations omitted).

For many of the reasons cited by the court in *Finch*, we consider this appeal frivolous as argued. An example of this frivolous argumentation appears in Mr. Chappabitty's efforts to oppose the district court holding that the *Dry Creek* exception does not apply. Mr. Chappabitty, on appeal, does not attempt to distinguish the authority upon which the district court relied, present counter authority, or forward a serious countervailing policy argument. Rather, he first references facts not alleged in the Complaint, which is impermissible on a motion

to dismiss. *See Sutton*, 173 F.3d at 1236. Then, he references, without citation, the Major Crimes Act, 18 U.S.C. § 1153, which governs the prosecution of enumerated crimes committed by an Indian in Indian Country. This case, of course, is a civil action brought by a non-Indian. Finally, Mr. Chappabitty cites *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978), in an attempt to argue that the Nation illegally exercised criminal jurisdiction over Mr. Gallegos. It is at best bizarre, and more likely, a grave mischaracterization, to characterize the Nation's firing of Mr. Gallegos as an exercise of criminal jurisdiction. *Cf. Charczuk v. C.I.R.*, 771 F.2d 471, 475-76 (10th Cir. 1985) ("Courts are in no way obligated to tolerate arguments that thoroughly defy common sense. Such conduct is permissible in our society for the very young, those attempting to make a joke or, occasionally, philosophers, but it cannot be allowed of one engaged in the serious work of a practicing attorney appearing before a court of law.").

If a court of appeals determines that an appeal is frivolous, it must afford the relevant party due process prior to imposing sanctions. "The due process requirements fall into two categories: (1) specificity of findings, to facilitate response and review, and (2) notice and opportunity to be heard." *Braley*, 832 F.2d at 1513. The first prong of the due process analysis is met when an appellate court addresses the merits on appeal. *Id*. at 1514. As to the second prong, "if a party has already made a motion . . . that sanctions be imposed, and identified the

party or counsel it wants to be sanctioned, the notice requirements are satisfied[.]"  *Id*. at 1515.  The opportunity to submit a response brief constitutes the opportunity to be heard.  *Id*.  Here, therefore, both prongs of the due process requirements are satisfied. [5]

Mr. Chappabitty contends, without relevant authority, [6] that the Nation's motion was premature because we had yet to rule on the merits.  Rule 38, however, requires only that a party file a separate motion for sanctions.  It is silent as to timing.  Our review of case law finds no prohibition against filing a motion for sanctions prior to a decision on the merits.  *Cf. Hirschfeld v. New Mexico Corr. Dept.*, 916 F.2d 572, 581 (10th Cir. 1990) (considering a motion for sanctions that was filed prior to disposition on the merits).

The Nation, pursuant to Rule 38, requests the Court to award it $13,507.50 in attorney's fees and double costs in the amount of $126.34.  The unopposed Affidavit of Wayne H. Bladh, counsel for the Nation, supports this request.  We find, however, that "just damages" in this case amount to $5,000.00.  *See* Fed. R. App. P. 38;  *Stafford v. United States*, 208 F.3d 1177, 1179 (10th Cir. 2000)

---

[5]We reject Mr. Chappabitty's assertion that a separately filed motion for sanctions provides insufficient notice.  His quote from the Rule 38 Advisory Committee Notes, which he takes out of context, lends no support to his position.

[6]Mr. Chappabitty's cite to *Braley*, 832 F.2d 1504 (10th Cir. 1987) (en banc), is without merit.  In *Braley*, the court considered the propriety of sanctions issued sua sponte, and did not address the timing of motions filed by parties.

(awarding Rule 38 sanctions of $4,000.00, an amount less than full attorney's fees).[7] Therefore, we grant the Nation's motion for sanctions in the amount of $5,000.00 in "just damages" and $126.34 in double costs.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Mr. Gallegos's complaint, GRANT, in part, the Nation's motion for Rule 38 sanctions and ORDER sanctions imposed against Mr. Chappabitty in the amount of $5,126.34.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Chief Circuit Judge

---

[7]We often remand to the district court for the determination of Rule 38 "just damages." *See, e.g., Beilue v. International Bhd. of Teamsters, Local No. 492*, 13 Fed. Appx. 810, 815 (10th Cir. 2001) (unpublished). Here, however, Mr. Chappabitty offers no protest, absent the specious timeliness argument, to the award of sanctions. As no findings of fact exist for the district court to make, we see no reason to remand. *See Stafford*, 208 F.3d at 1179.